IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02034-WJM-MEH

ALFONSO A. CARRILLO,
RAYMUNDO CASTILLO,
MARGARITA GARCIA,
SERGIO HERNANDEZ,
GONZALO PEREZ,
GERMAN JASSO BRUNO,
LAURA PATRICIA GUTIERREZ-VITE,
JOSE OROZCO,
MARIA ELENA CARRILLO,
ANA L. CHAVEZ,
DANIEL ORTIZ,
JUAN PABLO REYES,
TERESA MONGE,
JORGE RAMIREZ,
MARTHA ESQUIVEL,
LUIS FIGUEROA,
MANUEL PACHECO,
JOSE A. URENA-SANTOS,
WILLIAM CRISTO SANTOS,
SELVIN CARDOZA,
JESSICA ITURBE JAIME,
JULIO ARREGUIN,
AVARO NUNEZ,
NOHELIA JIMENEZ,
ELIZABETH PADILLA,
MA. DEL ROSARIO URENA,
NORA G. GONZALEZ,
HUGO A PACHECO,
SONIA LOPEZ,
RUBEN PADILLA,
ADRIANA PADILLA,
JANET VALERA,
CLAUDIA OROZCO MOLINA, and
JOSE M. VELASQUEZ,

        Plaintiffs,

v.

JOHN W. HICKENLOOPER, the Honorable Governor in his official capacity as Colorado
Governor,

JOHN W. SUTTERS (sic), Colorado Attorney General, in his official capacity as elected Colorado Attorney General,
ELIZABETH OLDHAM, in her official capacity as 14th Judicial District Attorney,
MITCHELL MORRISSEY, in his official capacity as Second Judicial District Attorney,
DON QUICK, in his official capacity as 17th Judicial District Attorney,
GEORGE H. BRAUCHLER, in his official capacity as 18th Judicial District Attorney,
RODNEY JOHNSON, in his official capacity as elected Grand County Sheriff,
TED MINK, in his official capacity as elected Jefferson County Sheriff,
FRANK THOMAS, in his official capacity as Sheriff,
SHERIFF DEPARTMENT, in its official capacity,
DOUGLAS N. DARR, in his official capacity as elected Adams County Sheriff,
TOM DELAND, in his official capacity as Broomfield Chief of Police,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court are Jefferson County Sheriff Ted Mink's Motion to Dismiss [filed December 3, 2012; docket #85], Defendant Tom Deland's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [filed December 6, 2012; docket #102], Defendant Adams County Sheriff Douglas N. Darr and 17th Judicial District Attorney Don Quick's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [filed December 7, 2012; docket #109], Motion to Dismiss of Defendants Hickenlooper and Suthers [filed December 20, 2012; docket #135], Defendants Mitchell R. Morrissey, Dan Chun, Phillip Geigle and George Brauchler's[1] Motion to Dismiss and for Sanctions [filed December 21, 2012; docket #142], Defendant Glen Trainor's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [filed December 26, 2012; docket #144], Defendants Elizabeth Oldham's and Rodney Johnson's Motion to Dismiss [filed December 26, 2012; docket #145] and Denver County

---

[1]George Brauchler was substituted for Carol Chambers as her successor.  Docket #201.

Defendants' Motion to Dismiss [filed December 27, 2012; docket #156].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matters are referred to this Court for recommendation.  The motions are fully briefed, and oral argument would not materially assist the Court in its adjudication of the motions.  For the reasons that follow, the Court respectfully RECOMMENDS that certain motions to dismiss be **granted** and other motions be **denied as moot** as set forth herein.[2]

## BACKGROUND

Plaintiffs, proceeding *pro se*, initiated this action on August 3, 2012 by filing a Complaint and Motion for Temporary Restraining Order [TRO] and Preliminary Injunction.  (Dockets #1 and #3.)  Plaintiffs subsequently filed two additional motions for preliminary injunctive relief.  (Dockets #4 and #8.)  The Honorable Phillip A. Brimmer denied the motions for TRO, but held in abeyance the motions for preliminary injunction.  (Dockets #5 and #10.)

I.     **Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiffs against the Defendants in the operative Complaint,

---

[2]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Since approximately 2006, unnamed law firms, individual Colorado public trustees and the Colorado Public Trustee Association allegedly lobbied for and supported changes in Colorado's foreclosure law, Colo. Rev. Stat. § 38-38-101, which amended Colo. R. Civ. P. 120 so that lenders are no longer required to produce original evidence of a note to commence foreclosure proceedings, but only a statement certifying that the party on whose behalf the foreclosure was commenced is the holder of the evidence of debt. The amendments to Rule 120 now allegedly prohibit homeowners from raising constitutional claims or other theories as a defense against a foreclosure during Rule 120 proceedings.

In response to certain Plaintiffs' attempts to defend against foreclosure using the doctrine of "adverse possession" or Colo. R. Civ. P. 105, Defendants allegedly engaged in the following conduct:

1.      On October 25, 2011, the office of the Denver District Attorney filed eleven charges against Plaintiff Alfonso Carrillo as follows: three counts of theft, four counts of forgery, and four counts of offering a false instrument for recording in the first degree;

2.      On November 18, 2011, Plaintiff German Jasso was arrested at his home after filing documents in the Grand County Clerk and Recording office affecting title of a property and after filing for a protection order against the Grand County Sheriff Department; the charges include trespass, theft and offering a false instrument for recording;

3.      From November 21, 2011 through May 18, 2012, television stations CBS 4 News and Univision broadcast stories concerning the above-mentioned charges against the Plaintiffs;

4.      On December 2, 2011, Plaintiff Laura Gutierrez Vite was arrested at her house and charged with trespass, theft and offering a false instrument for recording; she was released on a personal recognizance bond, and as a condition of her release, she and her husband were ordered to vacate the property and threatened with the removal of their three-year-old special needs son if they did not comply with the sheriff's orders; during the eviction on December 4, 2011, the Plaintiff's valuables, money and jewelry were stolen; Plaintiff suspected Officer Kyle Sandusky, who was later arrested and charged with burglary; a few days later, Plaintiff's son, Carlos, was subjected to an interrogation at his school regarding the charges lodged against his mother; Plaintiff and her husband were fired from their jobs and, fearing for their sons and threats by police, they left their home in Fraser, Colorado;

5.      On December 5, 2011, the office of the Denver District Attorney issued a "Consumer Fraud Alert" implying that Plaintiff Carrillo was guilty of the charges lodged against him;

6.      On December 16, 2011, Plaintiff Carrillo was arrested at his office in Lakewood, Colorado, and taken to Jefferson County Jail pursuant to four charges of theft; bail was set at $100,000.00;

7.      On December 19, 2011, Plaintiff Carrillo was prohibited from attending a hearing on civil charges brought by the Real Estate Commission; the hearing resolved in favor of Plaintiff Carrillo;

8.      In December 2011, Plaintiff Sergio Hernandez was charged in Douglas County with two counts of offering a false instrument for recording in the first degree, one count of first degree criminal trespass, and one count of perjury in the second degree; in early 2012, Mr. Hernandez was charged again involving a different property with one count of criminal attempt to commit theft, on count of offering a false instrument for recording in the first degree, one count of first degree criminal trespass, and one count of violation of bond conditions;

9.     Plaintiff Gonzalo Perez was arrested while filing an answer to a FED action with the Douglas County Clerk and later charged with crimes similar to those for which Mr. Hernandez was charged;

10.    In or about 2012, the Denver District Attorney empaneled a grand jury on the same charges already under active criminal prosecution against Plaintiff Carrillo, and on August 2, 2012, the grand jury indicted Plaintiff Carrillo, Rudy Breda, Jose Leyva and Veronica Fernandez Beleta, for which bail was set for Plaintiff Carrillo at $750,000.00.

## II.     Procedural History

The original Complaint identified 61 Plaintiffs in this action; however, due to certain Plaintiffs' failure to appear and prosecute the action, the Honorable William J. Martinez adopted this Court's recommendation to dismiss 27 of the named plaintiffs.  *See* dockets #45, #72 and #160. Thus, the above-named 34 Plaintiffs remain in this action.

In response to the Complaint, Defendants filed the present eight motions to dismiss arguing generally that Plaintiffs fail to state plausible claims for relief, primarily because Plaintiffs fail to identify or describe "who did what to whom" and fail to allege facts sufficient to identify a policy, custom or practice as necessary to state municipal liability claims.  Further, Defendants invoke the *Younger* abstention doctrine and immunities as applicable, such as those contained in the Eleventh Amendment and in the Colorado Governmental Immunity Act, and both qualified immunity and prosecutorial immunity.  Finally, the state Defendants contend they are not "persons" under 42 U.S.C. § 1983 and, thus, are not liable for Plaintiff's claims for monetary relief.

Plaintiffs responded to all pending motions in one brief, arguing for the entry of summary

judgment in Plaintiffs' favor.[3]  However, Judge Martinez terminated the motion as incorrectly filed, but accepted the brief as a response to the present motions.[4]  Docket #213.  In the brief, Plaintiffs re-state the claims in their Complaint and assert a number of "facts" (actually, arguments) the Plaintiffs allege were not disputed by the Defendants concerning the purported unconstitutional foreclosure process in Colorado, the "validity" of adverse possession as a defense to foreclosure and Defendants' conduct in allegedly violating the Plaintiffs' constitutional rights.

In reply, the Defendants essentially argue that Plaintiffs fail to cure the deficiencies asserted in the various motions to dismiss and merely re-state their allegations and claims in an improper conclusory fashion.  Defendants reassert their arguments that Plaintiffs fail to state plausible claims for relief and ask the Court to dismiss Plaintiffs' Complaint.

## LEGAL STANDARDS

### I.  Dismissal pursuant to Fed. R. Civ. P. 8

The adequacy of pleadings is governed by Federal Civil Procedure Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This rule "requires more than labels and conclusions,

---

[3]The Court notes that, like other filings by the Plaintiffs in this case, the brief is not properly signed by all Plaintiffs in contravention of Fed. R. Civ. P. 11.  *See* dockets #56, #168, #186, #197. This Court has warned the Plaintiffs that any such filings would be denied without prejudice or stricken; thus, while the Court is within its discretion to strike the brief for failure to comply, considering the Tenth Circuit's preference that courts strive to adjudicate matters on their merits, *see, e.g.,Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) ("our legal system strongly prefers to decide cases on their merits"), the Court will proceed to analyze the merits of the Defendants' motions and consider the Plaintiffs' response, to the extent it is proper to do so.

[4]As set forth herein, while the Plaintiffs attach extraneous material to their response brief, the Court has declined to convert the Defendants' motions to motions for summary judgment and simply proceeds with a Rule 12(b)(6) analysis of the Complaint itself.

and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

The purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the ground upon which it rests." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## II.     Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909.

8

Accordingly, Plaintiffs in this case bear the burden of establishing that this Court has jurisdiction to hear their claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motions launch a facial attack on this Court's subject matter jurisdiction; therefore, in analyzing jurisdictional challenges, the Court will accept as true the Complaint's well-pleaded factual allegations.

## III.   Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest

an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim.  *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

IV.     **Treatment of a Pro Se Plaintiff's Complaint**

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*. Accordingly, the court must "not supply additional facts, nor ... construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

<u>**ANALYSIS**</u>

Defendants challenge the sufficiency of Plaintiffs' allegations arguing that Plaintiffs do not comply with Fed. R. Civ. P. 8 by failing to allege any claim or injury for certain Plaintiffs and Defendants, fail to state plausible claims for relief pursuant to 42 U.S.C. § 1983, and fail to rebut the immunities certain Defendants enjoy from liability.  Keeping the applicable legal standards in mind, the Court will analyze each of these challenges in turn.

I.      **Short and Plain Statement**

As a threshold matter, the Court notes that Plaintiffs attempt to "incorporate by reference the

allegations and facts contained on [sic] previous civil actions under cases Nos. 12-cv-00003-WJM-MEH and 11-cv-02975-WJM-KLM." Complaint, docket #1 at 21. However, the Plaintiffs do not attach to the Complaint any pleadings or other documents from these closed cases, nor do they identify which allegations may pertain to the present matter. The Court concludes that Plaintiffs' reference is vague and insufficient to put Defendants on notice of the claims made against them. *See Garrett v. Selby Connor Madduz & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("the Court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("[t]he district court was not obligated to comb the record in order to make [plaintiff's] arguments for him.").

A.   Plaintiffs

Thirty-four named Plaintiffs remain in this case; however, the factual allegations in the Complaint refer by name to only five Plaintiffs: Alfonso Carrillo, German Jasso Bruno, Laura Gutierrez-Vite, Sergio Hernandez, and Gonzalo Perez.[5] The remaining allegations are concededly "background" facts[6] and concern purported problems with Colorado's foreclosure procedure; however, these allegations contain primarily legal conclusions and conclusory statements, and refer to none of the Plaintiffs as a group, individually or by name with respect to any injuries as a result of such problems. In other words, although the Complaint generally refers to "homeowners" and

---

[5]The Complaint also names Rudy Breda, Jose Leyva and Veronica Fernandez Beleta, but these persons were dismissed as Plaintiffs for their failure to prosecute the case. *See* Order, docket #160.

[6]The section of the Complaint in which these allegations are set forth is titled, "Preamble: Setting Up the Unconstitutional Changes and an Illegal Device." Complaint, docket #1 at 9.

"Hispanics," the Plaintiffs fail to identify how the Defendants' conduct (if any) has injured 29 of the named Plaintiffs.  In fact, it is not until well into the factual allegations section that the Plaintiffs are mentioned and, even then, the allegations reflect merely that "Plaintiffs" are raising the defense of "adverse possession" and "quiet title" pursuant to Colo. R. Civ. P. 105 in "defense of their property." Complaint, docket #1 at 18-20.

The Complaint next avers that, in response to Plaintiffs' defenses, the Defendants "have engaged in a series of illegal actions aimed to stop, prevent, limit and unjustly block Plaintiff's [sic] from bringing their defenses in open court by orchestrating, conspiring and carrying out an oppressing SLANDER AND LIBEL campaign against Plaintiffs by conducting repressible acts as the following:". *Id.*, docket #1 at 21 (emphasis in original).  Plaintiffs next outline the doctrine of "overbreadth," but do not explain its application; even construing the pleading liberally to interpret the allegations as an overbreadth challenge to a statute, 29 Plaintiffs do not identify any injuries they have suffered as a result of such alleged overbreadth.  Rather, the Plaintiffs pair the word "overbreadth" with "prosecution" and proceed to describe conduct resulting in alleged injuries to the five Plaintiffs named above.

The Court concludes that the 29 Plaintiffs have failed to allege they have standing to bring the constitutional claims identified in this action.[7]  Article III standing requires a plaintiff to allege, and ultimately prove, (1) he has suffered a concrete injury in fact; (2) a fairly traceable connection

---

[7]It remains a question in this Circuit whether standing is solely a jurisdictional issue; however, the Tenth Circuit has recently determined, "a dismissal for lack of standing can be at least colorably characterized as a dismissal for lack of subject matter jurisdiction." *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1225 (10th Cir. 2012).  Nevertheless, if standing implicates this Court's subject matter jurisdiction here, the Court notes that it may raise the issue of subject matter jurisdiction *sua sponte* at any time during the course of the proceedings. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988).

between the alleged injury in fact and the alleged conduct of the defendant; and (3) the plaintiff's

injury likely will be remedied by the relief requested. *Sprint Commc'ns Co., L.P. v. APCC Servs.,*

*Inc.*, 554 U.S. 269, 273-74 (2008). Here, 29 Plaintiffs – Raymundo Castillo, Margarita Garcia, Jose

Orozco, Maria Elena Carillo, Ana L. Chavez, Daniel Ortiz, Juan Pablo Reyes, Teresa Monge, Jorge

Ramirez, Martha Esquivel, Luis Figueroa, Manuel Pacheco, Jose A. Urena-Santos, William Cristo

Santos, Selvin Cardoza, Jessica Iturbe Jaime, Julio Arreguin, Avaro Nunez, Nohelia Jimenez,

Elizabeth Padilla, Ma. Del Rosario Urena, Nora G. Gonzalez, Hugo A. Pacheco, Sonia Lopez,

Ruben Padilla, Adriana Padilla, Janet Valera, Claudia Orozco Molina, and Jose M. Velasquez – fail

to state plausible claims for relief by failing to allege they have suffered a concrete injury in fact or

any facts demonstrating a connection between an injury and Defendants' alleged conduct.

Accordingly, the Court respectfully recommends that the District Court grant Defendants' motions

to dismiss claims brought by the above-named 29 Plaintiffs.

     B.    Defendants

     Plaintiffs bring claims against the Defendants in their official capacities.  Notably, three

individuals identified in the content of the Complaint, but not named as Defendants, filed motions

to dismiss in this case.  Glen Trainor, Dan Chun and Phillip Geigle seek to dismiss claims that may

be liberally construed against them; however, these individuals are not named as Defendants in this

action and, thus, the Court recommends that their motions to dismiss be denied as moot.

     Several other Defendants argue that they are named only in the caption and in the "Parties"

section of the Complaint and, thus, Plaintiffs fail to allege sufficient facts supporting any claims

against them.  Construing the pleading liberally as I must, the Court agrees that Plaintiffs allege no

facts supporting any claims concerning Defendants Tom Deland (Broomfield Chief of Police),

14

Douglas N. Darr (Adams County Sheriff), Don Quick (17th Judicial District Attorney), the City and County of Denver, Thomas Frank (Denver County Deputy Sheriff) and Governor John Hickenlooper that would be sufficient to put these Defendants on notice of claims against them and, thus, recommends that the District Court grant their motions to dismiss Plaintiffs' claims.

With respect to Jefferson County Sheriff Ted Mink, the only allegation concerning any conduct that occurred in Jefferson County is Plaintiff Carrillo's contention that, in response to his attempts to raise the defenses of "adverse possession" and "quiet title," he was arrested at his house in Lakewood and taken to the Jefferson County Jail pursuant to four charges of theft. Asserting certain facts not in the record, Sheriff Mink argues the allegation is insufficient pursuant to Fed. R. Civ. P. 8. The Court disagrees and finds the allegation itself sufficient to put the Defendant on notice of a claim against him in his official capacity.

## II.     Jurisdictional Defenses

Defendants Oldham, Johnson, Morrissey and Brauchler contend the Court lacks subject matter jurisdiction over Plaintiffs' claims against them because the claims are barred by the *Rooker-Feldman* doctrine and/or the Court must abstain based upon the *Younger* doctrine.

### A.     *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is a jurisdictional prohibition that is based upon 28 U.S.C. § 1257, which holds that federal review of state court judgments may be obtained only in the United States Supreme Court. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (holding that the *Rooker-Feldman* doctrine bars "a party losing in state court. . . from seeking what in substance would be appellate review of the state judgment in a United States district court,

based on the losing party's claim that the state judgment itself violates the loser's federal rights").

Here, the allegations in the Complaint give no indication that Plaintiffs seek relief from any state

court judgments, or from any state proceedings that have been finalized.  Therefore, the Court

concludes that the *Rooker-Feldman* doctrine does not apply to bar the Plaintiffs' claims in this case.

>    B.   *Younger* Abstention

The *Younger* abstention doctrine dictates that federal courts not interfere with state court

proceedings by granting equitable relief – such as injunctions of important state proceedings or

declaratory judgments regarding constitutional issues in those proceedings – when such relief could

adequately be sought before the state court." *Amanatullah v. Colorado Bd. of Med. Exam'rs*, 187

F.3d 1160, 1163 (10th Cir. 1999) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir.

1999)).  *Younger* abstention requires that federal courts abstain from exercising jurisdiction when:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'

*Id.* (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)).

When determining whether abstention is proper under the *Younger* framework, a court must

"be sensitive to the competing tension between protecting federal jurisdiction and honoring

principles of Our Federalism and comity." *Taylor*, 126 F.3d at 1296.  However, "*Younger* abstention

is 'non-discretionary ... absent extraordinary circumstances,' if the three conditions are indeed

satisfied." *Id.* (quoting *Amanatullah*, 187 F.3d at 1163).  "Extraordinary circumstances" includes

situations "where the plaintiff makes a showing of bad faith or harassment by state officials

responsible for the prosecution or enforcement action," or "where the state law or regulation to be

applied 'is flagrantly and patently violative of express constitutional prohibitions.'" *Brown ex rel.*

16

*Brown v. Day*, 555 F.3d 882, 888 n. 4 (10th Cir. 2009) (quoting *Trainor v. Hernandez*, 431 U.S. 434, 442 n.7 (1977)) (citations and quotations omitted).

The allegations presented by Plaintiffs in their lawsuit reflect that their claims and requests for relief may be related to ongoing proceedings in state court on matters of state concern, where the Plaintiffs seek injunctive relief concerning <u>pending</u> criminal proceedings and foreclosure or eviction proceedings. The Complaint does not describe the type, scope or stage of the pending proceedings and the Plaintiffs make no argument concerning abstention; thus, there is nothing indicating that the Court should question whether the state court provides an adequate forum to hear Plaintiffs' claims. *See Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003) ("Typically, a plaintiff has an adequate opportunity to raise federal claims in state court unless state law clearly bars the interposition of the [federal statutory] and constitutional claims. ... Colorado law does not bar such claims.") (internal quotations and citations omitted). However, construing the pleading liberally, the Plaintiffs appear to question the constitutionality of state statutes or rules, the application of which allegedly led to the pending proceedings against them. Because it is possible that, with more information, an exceptional circumstance may exist in this case (*see Brown*, 555 F.3d at 888 n. 4), the Court finds that *Younger* abstention is premature at this stage of the litigation.

III.     **Failure to State Claims Pursuant to 42 U.S.C. § 1983**[8]

---

[8]Plaintiffs quote this statute specifically under the heading "Violation of Civil Rights and Liberties under the First Amendment of the US Constitution." Complaint, docket #1 at 26-27. However, although the pleading may be read to bring only First Amendment claims pursuant to § 1983, the Court will construe the claims liberally and assume that all of Plaintiffs' constitutional claims are raised pursuant to § 1983.

The remaining Defendants argue they enjoy immunities from suit[9] under Section 1983 and contend the Plaintiffs' factual allegations fail to state plausible constitutional claims for relief against them in their official capacities.

A.    Eleventh Amendment

Defendant John Suthers, in his official capacity as Colorado's Attorney General, claims he enjoys sovereign immunity from damages by the Plaintiffs under the Eleventh Amendment.[10]  In addition, Defendants Brauchler (District Attorney for the 18th Judicial District), Oldham (District Attorney for the 14th Judicial District), and Morrissey (District Attorney for the 2nd Judicial

---

[9]Some Defendants raise the defenses of qualified immunity and prosecutorial immunity; however, these immunities apply to claims raised against defendants in their individual capacities. Here, the Plaintiffs specifically name each Defendant in his or her official capacity, except for Defendant Morrissey as set forth below.  *See* Complaint, docket #1 at 7-8.

[10]It remains unclear in the Tenth Circuit whether application of the Eleventh Amendment always requires a jurisdictional analysis.  In *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 941 (10th Cir. 2008), the court described Eleventh Amendment immunity as follows:

> Eleventh Amendment immunity doctrine is not easy to characterize. It shares features with affirmative defenses, while also containing traits more akin to subject-matter jurisdiction.  It is best understood according to its own unique identity, rather than through its similarities with other legal doctrines. In other words, "the Eleventh Amendment occupies its own unique territory."

*Id.* (citations omitted).  The *Burlbaw* court concluded that when a state affirmatively raises Eleventh Amendment immunity, the defense becomes a jurisdictional issue, but when the doctrine is conditionally raised, a court may resolve the merits of the claims first.  *Id.*

District),[11] sued in their official capacities,[12] may be protected from suit by the Eleventh Amendment.[13] Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991). Thus, an official-capacity

---

[11]These District Attorneys, sued in their official capacities, are executive officers of the State of Colorado. *See Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (citing *Beacom v. Bd. of Cnty. Comm'rs*, 657 P.2d 440, 445 (Colo. 1983)); *see also Romero v. Boulder Cnty. D.A.'s Office*, 87 F. App'x 696, 698 (10th Cir. 2004) (concluding claims against Boulder County district attorney in his official capacity were barred by Eleventh Amendment); *Bragg v. Office of the Dist. Atty.*, 704 F. Supp. 2d 1032, 1067 (D. Colo. 2009) (office of the 13th Judicial District "is a state agency with the power to assert the defense of sovereign immunity").

[12]All Defendants named in the caption of the Complaint are specifically sued in their "official" capacities. Likewise, the "Parties" section of the Complaint identifies all Defendants as sued in their "official" capacities, except for Defendant Morrissey who is identified as sued in his "individual" capacity. Complaint, docket #1 at 7. Therefore, construing the Complaint liberally, the Court will analyze Plaintiffs' claims against Morrissey in both his official and individual capacities.

[13]"[A] court may raise the issue of Eleventh-Amendment immunity sua sponte but, unlike subject-matter jurisdiction, it is not obligated to do so." *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (citing *Wisc. Dep't of Corr. v. Schacht,* 524 U.S. 381, 389 (1998)); *see also Nelson v. Geringer,* 295 F.3d 1082, 1098 n. 16 (10th Cir. 2002) ("[T]he [Supreme] Court has stated that judicial consideration of Eleventh Amendment issues sua sponte is discretionary, not mandatory.").

lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is properly seeking prospective enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiffs allege in the Complaint that they seek monetary damages, injunctive relief to "enjoin" pending foreclosure and eviction proceedings, to "stop and block" all ongoing criminal prosecutions against Plaintiffs, and to protect Plaintiffs from criminal prosecution when filing deeds and other instruments in local clerk and recorder's offices, and a declaration that "home acquisition and preservation thru [sic] ADVERSE POSSESSION AND QUIET TITLE is Constitutional and not illegal." *See* docket #1 at 35-36 (emphasis in original). Construing the pleading liberally, in seeking to enjoin Defendants from continuing with pending foreclosure and criminal proceedings, Plaintiffs ask the Court to find the Defendants have violated their federal rights in the past, which is not permitted pursuant to *Young*. At the same time, the requests for an order protecting Plaintiffs from criminal prosecution when filing documents with a clerk and recorder, and for a declaration that Plaintiffs' defenses are constitutional may be construed as prospective and, thus, are not barred by *Young*. *See Chamber of Commerce v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) ("the Eleventh Amendment does not apply to suits against a state officer in his official capacity seeking only prospective relief"); *see also Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008)

(citing *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004) ("A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.").  Consequently, the Court finds that any claims pursuant to 42 U.S.C. § 1982, § 1983 and § 1985[14] for monetary relief and for injunctions to stop pending state actions brought against Defendants Brauchler, Oldham, Suthers and Hickenlooper in their official capacities are barred by the Eleventh Amendment, and the Court recommends that the District Court grant the Defendants' motions in this regard and dismiss these claims.  Plaintiffs' claims for the above-described protective order and declaration against the Defendants in their official capacities are not barred by the Eleventh Amendment.

B.    Prosecutorial Immunity

To the extent that the Plaintiffs sue Defendant Morrissey in his individual capacity, Morrissey raises the defense of prosecutorial immunity.  Prosecutors enjoy absolute immunity from civil suits for damages asserted against them for actions taken "in initiating a prosecution and in presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see also Meade v. Grubbs*, 841 F.2d 1512, 1532 (10th Cir. 1988).  The question of whether a prosecutor is entitled to absolute immunity for his actions depends on the nature of the function performed by the prosecutor at the time of the alleged misconduct.  *Buckley v. Fitzsimmons,* 509 U.S. 259, 271 (1993).  Actions taken as an advocate or, more specifically, "acts undertaken by a prosecutor in preparing for the

---

[14]*See Fay v. U.S.*, 389 F. App'x 802, 803-04 (10th Cir. 2010) (extending Eleventh Amendment immunity to claims brought pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1985); *Doi v. Univ. of Utah*, No. 2:03 CV 216 DAK, 2004 WL 2457792, at *3 (D. Utah Oct. 28, 2004) ("it is well-established that Congress did not abrogate Eleventh Amendment immunity by passing 42 U.S.C. Sections 1981, 1982 and 1983") (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).

initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State" support absolute immunity. *Id.* at 273. However, "[a] prosecutor's administrative duties and

those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* Instead, prosecutors performing these acts enjoy only qualified immunity. *Id.* If prosecutorial immunity does attach, it is absolute and, therefore, applies to cases of malicious or bad faith prosecution, *Imbler,* 424 U.S. at 437, even if it is obvious "to the prosecutor that he is acting unconstitutionally and thus beyond his authority." *Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983).

Here, construing the pleading liberally, Plaintiffs' claims against Morrissey may include (1) "fil[ing] eleven false and baseless charges against Plaintiff Carrillo" on October 25, 2011; (2) issuing a news release titled, "Consumer Fraud Alert," containing false information regarding Plaintiff Carrillo; (3) keeping Plaintiff Carrillo in jail in Jefferson County despite a civil hearing in a case brought against Carrillo by the Colorado Real Estate Commission; (4) empaneling a grand jury for the same crimes allegedly committed by Plaintiff Carrillo under an active criminal prosecution; and (5) failing to notify Plaintiff Carrillo that he was the target of the grand jury investigation.

Morrissey argues these functions, including issuance of the news release, arise from his role as a prosecutor. The Court agrees that allegations (1), (3), (4) and (5) depict conduct that, if true, would be taken by Morrissey as an advocate for the State. *See Buckley,* 509 U.S. at 273. However, courts agree that the dissemination of information to the press is not protected by absolute prosecutorial immunity. *See Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir. 1981) ("where the alleged harm is ... damage to reputation caused by a prosecutor's dissemination of false information

to the press, ... the prosecutor cannot rely on the blanket protection of absolute immunity");
*Helstoski v. Goldstein*, 552 F.2d 564, 566 (3d Cir. 1977) ("deliberate leaks by the prosecutor" ...
"would lie outside of the rationale for absolute immunity ... [a]t most, it would be subject to
qualified good-faith immunity"); *Whelehan v. Monroe Cnty.*, 558 F. Supp. 1093, 1099 (W.D.N.Y.
1983) (same); *Kutilek v. Gannon*, 766 F. Supp. 967, 973 n. 4 (D. Kan. 1991) (because "a
prosecutor's statements to the press have been consistently considered as a part of the prosecutor's
administrative function, only entitling the prosecutor to qualified immunity," the court concluded
the defendant could not claim absolute immunity for issuing a news release).  The Tenth Circuit
agrees and has held that a prosecutor's statements made to the press that were not made in his role
as an advocate are not entitled to absolute immunity.  *England v. Hendricks*, 880 F.2d 281, 285 (10th
Cir. 1989), *cert. denied*, 493 U.S. 1078 (1990).  Here, the allegations reflect that Morrissey issued
a "Consumer Fraud Alert"; thus, even if it were not clear that the news release falls outside the
doctrine of absolute immunity, the Court finds that issues of fact concerning whether Morrissey was
acting in his role as an advocate by issuing the news release preclude dismissal at this stage.

Therefore, the Court recommends that, to the extent the Plaintiffs sue Morrissey in his
individual capacity, the District Court find Morrissey is entitled to absolute prosecutorial immunity
from Plaintiff's claims for money damages with respect to all alleged conduct except the issuance
of the news release on December 5, 2011,[15] and grant Morrissey's motion to dismiss all such claims
for money damages.

---

[15]Although the Supreme Court in *Buckley,* 509 U.S. at 273, states that prosecutors'
administrative functions may enjoy qualified immunity, "qualified immunity is an affirmative
defense to a section 1983 action."  *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995).
Morrissey does not raise the defense of qualified immunity on behalf of himself in his motion to
dismiss.  *See* Motion, docket #142 at 14-15.

C.   Municipal Liability

Defendants Grand County Sheriff Johnson and Jefferson County Sheriff Mink are (like most Defendants here) sued in their official capacities.  "[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent ...."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978).  The Supreme Court recognizes that municipalities and other local government units are "persons" to whom Section 1983 applies.  *Id.* Defendants Johnson and Mink argue the Plaintiff fails to assert sufficient facts demonstrating the existence of an unconstitutional policy or custom and, if such did exist, that it has been enforced by the county governments.[16]

Local governments can be liable under § 1983 "only for their ***own*** illegal acts."  *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (internal quotation and citations omitted) (emphasis in original).  Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff."  *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell*, 436 U.S. at 692).  Rather, to prove a § 1983 claim against a municipality, a plaintiff must demonstrate (1) the existence of a municipal policy or custom, which (2) directly caused the injury alleged.  *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)).  In establishing the first requirement, a plaintiff may show a municipal policy

---

[16]Defendants Suthers and Hickenlooper also argue that the Plaintiffs fail to "identify any custom, policy or practice to support their claims against the State Defendants."  Motion, docket #135 at 7.  However, as the Supreme Court found in *Will v. Michigan Dep't of State Police*, "it does not follow that if municipalities are persons then so are states. States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in *Monell* to local government units which are not considered part of the State for Eleventh Amendment purposes."  *See O'Hara v. Indiana Univ. of Penn.*, 171 F. Supp. 2d 490, 499 (W.D. Pa. 2001) (quoting *Will,* 491 U.S. 58, 70 (1989) (citation and quotation marks omitted)).

or custom in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions - and the basis for them - of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotations omitted). The Court will proceed to determine first whether the Complaint identifies municipal policies or customs that may be attributed to either Defendant.

### 1.     Sheriff Mink

The sole allegation that could be liberally construed as lodged against Sheriff Mink or Jefferson County is that on December 16, 2011, Plaintiff Carrillo was arrested at his office in Lakewood, Colorado, and taken to Jefferson County Jail pursuant to four charges of theft. There are no allegations concerning any policy, custom or practice against either Sheriff Mink or Jefferson County. Accordingly, the Court recommends that the District Court grant Sheriff Mink's motion to dismiss Plaintiff's § 1983 claims against him.

### 2.     Sheriff Johnson

The factual allegations that could be liberally construed against Sheriff Johnson or Grand County are:

1.     On November 18, 2011, Plaintiff German Jasso was arrested at his home after filing

documents in the Grand County Clerk and Recording office affecting title of a property and

25

after filing for a protection order against the Grand County Sheriff Department; the charges include trespass, theft and offering a false instrument for recording; and

2.      On December 2, 2011, Plaintiff Laura Gutierrez Vite was arrested at her house and charged with trespass, theft and offering a false instrument for recording; she was released on a personal recognizance bond, and as a condition of her release, she and her husband were ordered to vacate the property and threatened with the removal of their three-year-old special needs son if they did not comply with the sheriff's orders.

Again, there is no mention nor any allegations indicating that the injuries these Plaintiffs allegedly suffered were the result of a municipal policy, custom or practice.  Plaintiffs fail to allege any formal county regulations nor policy statements, any widespread practice, that the sheriffs had final policymaking authority, or that the sheriffs failed to adequately train or supervise their employees. Thus, because there are no allegations concerning any policy, custom or practice against either Sheriff Johnson or Grand County, the Court recommends that the District Court grant Sheriff Johnson's motion to dismiss Plaintiff's § 1983 claims against him.

D.      <u>Stating Constitutional Claims</u>

At this point, the § 1983 claims remaining are those against Defendants Suthers, Oldham, Brauchler and Morrissey in their official capacities for prospective declaratory and injunctive relief (injunction to protect Plaintiffs from criminal prosecution when filing deeds and other instruments in local clerk and recorder's offices, and a declaration that "home acquisition and preservation thru [sic] ADVERSE POSSESSION AND QUIET TITLE is Constitutional and not illegal), and against Morrissey in his individual capacity for declaratory and injunctive relief.  These Defendants all argue that Plaintiffs fail to state plausible constitutional claims against them.

26

### 1.    First Amendment

"The First Amendment right to 'petition the government for a redress of grievances' means that an individual has a right to access the courts to redress a constitutional violation." *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992) (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972)).  To state a claim for denial of access to the courts, a plaintiff "must allege that his position as a litigant was prejudiced" by the defendant's actions.  *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993).  In other words, "a plaintiff must demonstrate 'actual injury,' meaning the defendant 'took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim.'" *Rees v. Office of Children & Youth*, 744 F. Supp. 2d 434, 458 (W.D. Pa. 2010) (quoting *Beckerman v. Susquehanna Twp. Police & Admin.*, 254 F. App'x 149, 153 (3d Cir. 2007)) (internal quotations omitted) (alteration in original).  "[D]ue process and the First Amendment require only that an impartial forum be available to litigants, and not that the doors of every courtroom in the land be open to them." *Airlines Reporting Corp. v. Barry*, 825 F.2d 1220, 1224 (8th Cir. 1987).

Here, construing the pleading liberally, Plaintiffs claim that January 1, 2008 amendments to Colorado's "foreclosure law" resulted in the use of a "Statement by Attorney" or a "Certification of Qualified Holder," which apparently are sufficient to demonstrate the foreclosing entity is a qualified holder of the debt.  Plaintiffs contend the use of these documents have "invalidated the[ir] protected right[s] to PETITION THE GOVERNMENT FOR A REDRESS OF GRIEVANCES within the First Amendment of the US Constitution that guarantees the homeowner their right to defend their property under due process of law."  Complaint, docket #1 at 30 (emphasis in original).

However, the Plaintiffs fail to allege how Defendants Suthers, Oldham, Brauchler and Morrissey have acted in such a way to cause the alleged denial of their access to the courts.   There are no allegations that these Defendants used, created or, in any other way, encouraged or enforced the use of the Statement by Attorney or Certification of Qualified Holder to deny the Plaintiffs access to the courts.   Nor are there allegations that these Defendants participated in the foreclosure process at all.

Moreover, Plaintiffs mention that Defendants' "libel and slander violations" caused them damage and "abuse[d]" their First Amendment rights.   Complaint, docket #1 at 30.   However, while a defamation claim may have certain limitations as a result of the First Amendment (*see New York Times v. Sullivan*, 376 U.S. 254 (1964)), there is no claim under the First Amendment for defamatory statements allegedly made by the Defendants.   *See Meadows at Buena Vista, Inc. v. Arkansas Valley Publ. Co.*, No. 10-cv-02871-MSK, 2012 WL 502688, at *5 n.9 (D. Colo. Feb. 15, 2012) ("[*Sullivan*] does not, however, convert an alleged defamatory false statement by a public official, without more, into a constitutional injury. As a legal matter, the Court is unaware of any free-standing constitutional right to be free from a government official's publication of false statements.") (citing *Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 726-27 (10th Cir. 2000)).

Therefore, the Court recommends that the District Court grant the Defendants' motions to dismiss Plaintiffs' First Amendment claims against them.

2.      Fourth Amendment

Plaintiffs allege their Fourth Amendment rights were violated in the form of "false arrests." (Docket #1 at 31.)  However, Plaintiffs' claims challenging their arrests are barred by the favorable

termination rule announced in *Heck v. Humphrey,* 512 U.S. 477 (1994).  In *Heck,* the United States

Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance or a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87.  Plaintiffs do not allege that they obtained favorable terminations of convictions,

if any.   But, their claims are necessarily barred by *Heck*, as such suit would constitute an

impermissible collateral attack on the validity of any conviction.  *See Duamutef v. Morris*, 956 F.

Supp. 1112, 1117-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false

arrest, perjury, First Amendment retaliation, and conspiracy for failure to satisfy *Heck*); *Burden v.*

*Wood*, 200 F. App'x 806, 807 (10th Cir. Oct. 17, 2006) (in light of a conviction that has not been

overturned on direct appeal or otherwise rendered invalid, plaintiff's false arrest claim cannot be

maintained in light of *Heck* ); *Wheeler v. Scarafiotti,* 85 F. App'x 696, 700 (10th Cir. Jan. 8, 2004)

("an attempt to convince a jury that the [defendant] officers falsified the very reports that led to

[plaintiff's] conviction would cast doubt on that conviction").

The Complaint reflects the existence of no convictions from the arrests alleged by the

Plaintiffs; thus, any Fourth Amendment claims would be premature here.  Accordingly, the Court

recommends that the District Court grant Defendants' motions to dismiss Plaintiffs' Fourth

Amendment claims.

### 3.   Fifth Amendment

The Plaintiffs raise claims for violation of due process and double jeopardy clauses of the

Fifth Amendment; however, the Fifth Amendment applies to federal actors, whereas the Fourteenth

Amendment applies to state and local actors. *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the federal government); *Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007) ("only the Fourteenth Amendment imposes a due process requirement on state officials").  Here, no federal government Defendants are named and there are no allegations made against federal government actors; therefore, the Plaintiffs have failed to state plausible Fifth Amendment claims, and the Court recommends that the District Court grant Defendants' motions to dismiss Plaintiffs' Fifth Amendment claims.

    4.    Sixth Amendment

Plaintiff Carrillo claims that "Defendants" violated the Sixth Amendment by "holding [ ] information purposely and prejudicially leaked to the Media that Plaintiff is the Target of a Grand Jury."  Complaint, docket #1 at 32.  According to Carrillo's factual allegations, the "Denver DA," Defendant Morrissey, did not "properly notif[y] [Carrillo] that [he] is the target of such Grand Jury as required and in violation of the Sixth Amendment."  *Id.* at 26.  Defendant Morrissey counters that Plaintiff fails to allege any "factual basis" for the claim.  Motion, docket #142 at 13.

As set forth in the Complaint, the Sixth Amendment, made applicable to the States by the Fourteenth Amendment, states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ... and to be informed of the nature and cause of the accusation."  U.S. Const. amend. VI.  Even taking the allegations as true, Carrillo does not allege how "empaneling a grand jury" constitutes a criminal prosecution under which Morrissey would be required to notify him of the nature and cause of any accusation.  Rather, a grand jury "is invested with broad investigatorial powers into what *may be* found to be offenses against [ ] criminal law." *United States v. Johnson*, 319 U.S. 503, 510 (1943) (emphasis added); *United States v. Zucker*, 161 U.S. 475, 481

(1896) ("The words, in the sixth amendment, 'to be informed of the nature and cause of the accusation,' obviously refer to a person accused of crime, whether a felony or misdemeanor, for which he is *prosecuted by indictment or presentment*, or in some other authorized mode which may involve his personal security.") (emphasis added).

Consequently, because Plaintiff Carrillo fails to allege the existence of a criminal prosecution in which he allegedly was not notified of the charges against him, the Court recommends that the District Court grant Defendant Morrissey's motion to dismiss the Sixth Amendment claim.

     5.     Ninth Amendment

The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend IX. It is well established that the Ninth Amendment is not an independent source of individual rights, but a rule of construction to be applied in certain cases. *See United States v. Bifield,* 702 F.2d 342, 349 (2nd Cir. 1983). Plaintiffs fail to allege in any way how their "claim" under the Ninth Amendment is to be applied, and there is no private right of action. Accordingly, the Court recommends that the District Court grant the Defendants' motions to dismiss Plaintiff's Ninth Amendment claims.

     6.     Fourteenth Amendment

As with most of their claims, Plaintiffs make a general assertion of Fourteenth Amendment "violations" by the Defendants. Here, construing their pleading liberally, the Court concludes that Plaintiffs seek application of the Fourteenth Amendment to the state and municipal Defendants for claims that would otherwise be brought only against federal government actors (*i.e.*, under the Fifth Amendment).

First, Plaintiffs seek relief from the Defendants for "denying, blocking and hindering the Due Process of Law."  Complaint, docket #1 at 32.  The Plaintiffs fail altogether to support this claim with any factual allegations.  However, construing the Complaint liberally, the Court concludes that Plaintiffs allege they were denied due process of law in the foreclosure process by the use of the "Statement of Attorney" and "Certification of Qualified Holder."  *See* Complaint, docket #1 at 30.  As set forth above, however, Plaintiffs fail to allege how Defendants Suthers, Oldham, Brauchler and Morrissey have acted in such a way to cause the alleged denial of due process.  There are no allegations that these Defendants used, created or, in any other way, encouraged or enforced the use of the Statement by Attorney or Certification of Qualified Holder to deny the Plaintiffs any due process.  In fact, there are no allegations that these Defendants participated in the foreclosure process at all.  Consequently, the Plaintiffs have failed to state claims for violation of the due process clause.

Second, Plaintiff Carrillo claims he suffered "double jeopardy" in violation of the Fifth Amendment when Defendant Morrissey empaneled "a Grand Jury for the same civil cause of action already resolved and/or under active criminal prosecution for the same alleged crimes."  Complaint, docket #1 at 26.  Morrissey responds that Plaintiff's allegations fail "because they are no more than conclusions without supporting factual allegations."  Motion, docket #142 at 12.

Morrissey is correct.  The Double Jeopardy clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment (*Bobby v. Bies*, 556 U.S. 825, 832 (2009)), "protects against multiple punishments for the same offense."  *Missouri v. Hunter*, 459 U.S. 359, 365 (1983).  However, Plaintiffs fail to allege any facts supporting this claim other than that Morrissey empaneled a grand jury on the "same" civil cause of action or for the "same" alleged crimes.

Plaintiff Carrillo does not identify which crimes or causes of action are allegedly the same, or even that he has received multiple punishments for the same offense. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

Accordingly, the Court finds that Plaintiffs have failed to state plausible claims for violations of the Fourteenth Amendment, and recommends that the District Court grant Defendants' motions to dismiss these claims.

## IV. Failure to State Claim pursuant to 18 U.S.C. § 201

Under "Count 1," Plaintiffs seek relief pursuant to 18 U.S.C. § 201; however, the criminal statute provides no private right of action. *Ray v. Proxmire*, 581 F.2d 998, 1001 (D.C. Cir.), *cert. denied*, 439 U.S. 933 (1978). Even if Plaintiffs had a right to bring a civil action here, the statute prohibits bribery of *federal* public officials or of those working with the federal government. *See Dixson v. United States*, 465 U.S. 482, 496 (1984) ("To determine whether any particular individual falls within this category, the proper inquiry is not simply whether the person had signed a contract with the United States or agreed to serve as the Government's agent, but rather whether the person occupies a position of public trust with official *federal* responsibilities") (emphasis added); *see also Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006) ("Section 201(a) generally limits application of the federal bribery statute to federal officials or persons 'acting for or on behalf of the United States, or any department, agency or branch of Government thereof'"); *United States v. Gallegos*, 510 F. Supp. 1112, 1113 (D.N.M. 1981) (allegedly bribed official, "[a]lthough he was not an employee of the federal government, [ ] was working under the direct supervision of a federal

official in the administration of a federal grant program").  As stated above, the Plaintiffs bring no

claims against federal government officials and there are no allegations that the Defendants were

working with or under any federal government officials or pursuant to federal programs.  Therefore,

the Court recommends that the District Court grant Defendants' motions to dismiss Plaintiffs' claims

pursuant to 18 U.S.C. § 201.


**V.      Failure to State Claims pursuant to 42 U.S.C. § 1982 and 42 U.S.C. § 3617**

The Fair Housing Act (FHA) provides a private right of action for an "aggrieved person"

subjected to "an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A).  An aggrieved

person is defined to include any person who "claims to have been injured by a discriminatory

housing practice."   42 U.S.C. § 3602(i).   A discriminatory housing practice is "an act that is

unlawful under section 3604, 3605, 3606, or 3617 of this title."  42 U.S.C. 3602(f).

42 U.S.C. § 1982 provides: "All citizens of the United States shall have the same right, in

every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell,

hold, and convey real and personal property."  "A § 1981 or § 1982 plaintiff must prove by a

preponderance of the evidence that the defendant intentionally discriminated against him or her on

the basis of race.... Such proof may come from either direct or indirect evidence." *The Guides, Ltd.*

*v. The Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1073 (10th Cir. 2002).  "The three-part

burden of proof analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),

a Title VII employment discrimination case, has been widely applied to FHA and § 1982 claims."

*Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989) (citing *Denny v. Hutchinson Sales Corp.,*

649 F.2d 816, 822-23 (10th Cir. 1981); *Phiffer v. Proud Parrot Motor Hotel,* 648 F.2d 548, 551 (9th

Cir. 1980); *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032 (2d Cir. 1979)).

> Under the *McDonnell Douglas* analysis, plaintiff first must come forward with proof of a prima facie case of discrimination. Second, if plaintiff proves a prima facie case, the burden shifts to defendants to produce evidence that the refusal to rent or negotiate for a rental was motivated by legitimate, non-racial considerations. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981). Third, once defendants by evidence articulate non-discriminatory reasons, the burden shifts back to plaintiff to show that the proffered reasons were pretextual. *Id.* at 256. The proof necessary to establish a prima facie case under the FHA also establishes a prima facie case of racial discrimination under § 1982. In order to establish her prima facie case, plaintiff had to prove that:
> (1) she is a member of a racial minority;
> (2) she applied for and was qualified to [inherit, purchase, lease, sell, hold, or convey the property at issue];
> (3) she was denied the opportunity to [inherit, purchase, lease, sell, hold, or convey] or negotiate for the [inheritance, purchase, lease, sale, hold, or conveyance of the property at issue]; and
> (4) the housing opportunity remained available.

*Asbury*, 866 F.2d at 1279 (citing *Selden Apartments v. U.S. Dep't of Housing & Urban Dev.*, 785 F.2d 152, 159 (6th Cir. 1986); *Robinson,* 610 F.2d at 1038). While § 1982 protects property owners from discrimination on the basis of race, the FHA protects a wider scope of persons; thus, "to make out a prima facie case under Section 3617, plaintiff must demonstrate that (1) she is a member of a protected class under the Fair Housing Act; (2) she exercised or enjoyed a right protected by Sections 3603 through 3606, or aided or encouraged others in exercising or enjoying such rights; (3) intentional discrimination motivated defendants' conduct, at least in part; and (4) defendants' conduct constituted coercion, intimidation, a threat, or interference on account of plaintiff having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606." *Zhu v. Countrywide Realty Co., Inc.*, 165 F. Supp. 2d 1181, 1196 (D. Kan. 2001) (citing *United States v. Sea Winds of Marco, Inc.*, 893 F. Supp. 1051, 1055 (M.D. Fla.1995)).

Here, as in most of the Complaint, Plaintiffs fail to identify "who did what to whom."

However, construing the pleading liberally, the Court finds that Plaintiffs Gutierrez Vite and Jasso allege misconduct by Grand County actors, Sheriff Johnson and District Attorney Oldham, for the "forced eviction" from their home as a condition of Ms. Gutierrez Vite's release from custody. Because Plaintiffs sue these actors in their official capacities, the claims are brought against Grand County and the 14th Judicial District for the State of Colorado. The Court has already determined that Plaintiffs fail to allege any policy or custom that might render Grand County liable.

Plaintiffs mention that they are all of Hispanic descent; thus, the Court finds that they have met the first prong for alleging claims under § 1982 and the FHA. However, there are no allegations concerning whether the Plaintiffs were qualified or, otherwise, protected by the statutes, whether their housing opportunity remained available and whether Defendants' alleged conduct was motivated by the Plaintiffs' race. Thus, Plaintiffs fail to state plausible claims under 42 U.S.C. § 1982 and 42 U.S.C. § 3617, and the Court recommends that the District Court grant Defendants' motions to dismiss these claims.

## VI.     Failure to State Claims pursuant to 42 U.S.C. § 1985 and 42 U.S.C. § 1986

Under the heading, "Violation of the Fourth Amendment of the US Constitution," Plaintiffs quote the statutes, 42 U.S.C. § 1985(2) and (3) and 42 U.S.C. § 1986. Complaint, docket #1 at 27. Although vague and conclusory, but construing the Complaint liberally, the Court concludes that Plaintiffs allege that Defendants conspired to violate their Fourth Amendment rights or failed to prevent the conspiracy.

To establish a § 1985 conspiracy, a plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right." *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) (citing *Dixon v. City of Lawton,* 898 F.2d 1443, 1449 (10th Cir. 1990)). As

discussed above, the Plaintiffs have failed to allege Fourth Amendment claims against the Defendants in this case.  Thus, any 42 U.S.C. § 1985(3) conspiracy claims based on alleged Fourth Amendment violations by Defendants must likewise fail.  "Infringement of some federally protected right independent of § 1985(3) is required for a violation of the conspiracy statute to be demonstrated."  *Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir. 1980) ("[W]e feel that the [Supreme] Court has indicated that a violation of an independently created right is required. Section 1985(3) "... by contrast, creates no rights.  It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right – to equal protection of the laws or equal privileges and immunities under the laws – is breached by a conspiracy in the manner defined by the section.") (quoting *Great Am. Fed. Savs. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979)); *see also Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995) ("we have already determined that other reasons justified the terminations. Thus, Messrs. Murray and Weaver cannot show that the alleged conspiracy injured or deprived them of a right."); *Dixon*, 898 F.2d at 1449 n.6 ("***Provided that there is an underlying constitutional deprivation***, the conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy") (emphasis added).

Furthermore, "there can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985." *Santisteven v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984).

Therefore, because the Plaintiffs fail to allege a conspiracy to deprive them of their Fourth Amendment rights, the Court recommends that the District Court grant the Defendants' motions to dismiss Plaintiffs' claims pursuant to 42 U.S.C. § 1985 and 42 U.S.C. § 1986.

**IV.     Leave to Amend**

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).  As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations.  *See Bellmon,* 935 F.2d at 1109-10.  The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile."  *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)).   Here, the Plaintiffs have not properly amended their pleading despite opportunities to do so.  However, they also have not yet received guidance from the Court.  As set forth above,  the Plaintiffs have attempted to "incorporate by reference" allegations from two previously closed cases.  The Court finds such incorporation vague and insufficient; however, Plaintiffs' attempt and their statements in the response brief providing additional information and allegations lead the Court to believe that some of the deficiencies found herein may be cured.  Thus, because it is possible Plaintiffs may cure the pleading deficiencies for constitutional and statutory claims, the Court recommends that Plaintiffs be allowed to file an amended complaint within thirty (30) days of the District Court's Order.

## CONCLUSION

Here, certain individuals who are not named as Defendants in this case filed motions to dismiss; thus, this Court respectfully recommends that Defendant Glen Trainor's Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6) [filed December 26, 2012; docket #144] be **DENIED AS MOOT** and Defendants Mitchell R. Morrissey, Dan Chun, Phillip Geigle and George Brauchler's Motion to Dismiss and for Sanctions [filed December 21, 2012; docket #142] be **DENIED AS MOOT** as to Defendants Chun and Geigle. Otherwise, the Plaintiffs have failed to state cognizable claims against all named Defendants in their official capacities and against Defendant Morrissey in his individual capacity in this case. Accordingly, the Court respectfully RECOMMENDS that Jefferson County Sheriff Ted Mink's Motion to Dismiss [filed December 3, 2012; docket #85], Defendant Tom Deland's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [filed December 6, 2012; docket #102], Defendant Adams County Sheriff Douglas N. Darr and 17th Judicial District Attorney Don Quick's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [filed December 7, 2012; docket #109], Motion to Dismiss of Defendants Hickenlooper and Suthers [filed December 20, 2012; docket #135], Defendants Mitchell R. Morrissey, Dan Chun, Phillip Geigle and George Brauchler's Motion to Dismiss and for Sanctions (as to Defendants Morrissey and Brauchler) [filed December 21, 2012; docket #142], Defendants Elizabeth Oldham's and Rodney Johnson's Motion to Dismiss [filed December 26, 2012; docket #145] and Denver County Defendants' Motion to Dismiss [filed December 27, 2012; docket #156] be **GRANTED** as set forth herein, but that Plaintiffs be granted leave to amend their Complaint to attempt to cure the deficiencies identified herein within thirty (30) days of the District Court's order.

Respectfully submitted this 11th day of March, 2013, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge

39