IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02034-RM-MEH

ALFONSO A. CARRILLO,

      Plaintiff,

v.

JOHN W. SUTHERS, Colorado Attorney General, in his individual and official capacities,
RICK RAEMISCH, in his individual and official capacities,
BOBBY BONNER, in his individual and official capacities,
MITCHELL MORRISSEY, in his individual and official capacity as Second Judicial District Attorney,
MORRIS B. HOFFMAN, Judge, in his official and representative capacities,
PHIL GEIGLE, in his individual and representative capacities,
DARRYL SHOCKLEY, in his individual and representative capacities,
DANIEL CHUN, in his individual and representative capacity as Denver D.A. detective,
BRAD UYAMURA, in his individual and representative capacity as Denver D.A. detective,
FRANK THOMAS, Sheriff, in his individual and official capacities,
GARY WILSON, in his individual and official capacities,
ELIAS DIGGINS, in his individual and official capacities,
DENVER SHERIFF DEPARTMENT, in its official capacity,
DOUGLAS K. WILSON, in his individual and official capacities,
ELIZABETH PORTER-MERRILL, in her individual and official capacities,
NICHOLAS SARWAK, in his individual and official capacities,
DOUGLAS N. DARR, in his individual and official capacities,
CAROL CHAMBERS, in her individual and official capacities as 18th Judicial District Attorney,
GEORGE H. BRAUCHLER, in his individual and official capacities as 18th Judicial District Attorney, and
TED MINK, in his individual and official capacities as elected Jefferson County Sheriff,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court are Defendant Adams County Sheriff Douglas N. Darr's Motion to Dismiss

[filed September 8, 2014; docket #356], Defendants' Thomas Frank and Denver Sheriff

Department's Motion to Dismiss [filed September 15, 2014; docket #358], Jefferson County Sheriff Ted Mink's Motion to Dismiss [filed September 16, 2014; docket #361], Defendants Mitchell R. Morrissey, Dan Chun, Phillip Geigle and George Brauchler and Carol Chambers' Motion to Dismiss and for Sanctions [filed September 16, 2014; docket #362], and Defendant John Suthers' Motion to Dismiss Plaintiff's First Verified Amended Complaint [filed September 16, 2014; docket #363] (collectively referred to as "moving Defendants").[1]  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matters are referred to this Court for recommendation.  The motions are briefed to the extent permitted by court rules, and oral argument would not materially assist the Court in its adjudication of the motions.  For the reasons that follow, the Court respectfully RECOMMENDS that the motions to dismiss be **granted**.[2]

---

[1]The Court notes there is nothing in this case's lengthy record demonstrating that Plaintiff secured an order granting him leave to proceed *in forma pauperis* before Judge Moore's order granting the motions to dismiss (*see, e.g.*, dockets ##197, 237, 254, 267), nor has he sought leave to proceed *in forma pauperis* following the filing of the operative pleading.  Thus, the Plaintiff is responsible for serving his amended pleading pursuant to Fed. R. Civ. P. 4; however, the record indicates nothing demonstrating the Plaintiff has timely served the operative pleading on newly named Defendants Raemisch, Bonner, Hoffman, Shockley, Uyamura, Gary Wilson, Diggins, Douglas Wilson, Diggins, Porter-Merrill, and Sarwak.  Accordingly, pursuant to Fed. R. Civ. P. 4(m), this Court recommends that the District Court dismiss the claims brought against these Defendants without prejudice.

[2]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar*

## BACKGROUND

Plaintiff Carrillo and others, proceeding *pro se*, initiated this action on August 3, 2012 by filing a Complaint.  (Dockets #1 and #3.)  The original Complaint identified 61 Plaintiffs in this action; however, due to certain Plaintiffs' failure to appear and prosecute the action, the Honorable William J. Martinez adopted this Court's recommendation to dismiss 27 of the named plaintiffs.  *See* dockets #45, #72 and #160.  Thus, 34 Plaintiffs remained in this action at the time Defendants filed their original dispositive motions.

Based upon allegations that "(1) changes were made to Colorado laws governing foreclosure proceedings, (2) the changes made it easier to foreclose on properties, (2) the changes were made both illegally and improperly, (4) Plaintiffs sought to challenge foreclosures affecting them under the new law, and (5) Defendants have attempted to intimidate Plaintiffs or retaliate against them for resisting foreclosure by a wide range of conduct, including having one or more Plaintiffs arrested and charged in criminal court with violations of law,"[3] the Plaintiffs raised claims for violations of the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution.  The District Court, Honorable Raymond P. Moore, issued an order on May 14, 2014 adopting this Court's recommendation to dismiss Plaintiffs' claims against the movants, and to allow the Plaintiffs to amend their pleading to cure deficiencies found by the Court.  (Dockets ##218, 324.)  After receiving several extensions of time within which to do so, Plaintiff Carillo filed the operative First Amended Verified Complaint on August 20, 2014 on behalf of only himself.  (Docket #342.)  No other Plaintiff filed an amended pleading and, thus, they were dismissed from the case.

---

*Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[3]Judge Moore's Order Adopting Recommendation of Magistrate Judge, May 14, 2014, at 3.

## I.     Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff against the moving Defendants in the operative First Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Since early 2009, Plaintiff, owner and operator of America's Home Retention Services, Inc., provided services of Real Estate Consultant, Civil Rights Advocate and Fair Housing Coordinator to his mainly Hispanic customers to retain, defend, protect and acquire real estate property and to oppose allegedly fraudulent and discriminatory mortgage loans.  Plaintiff alleges these loans were "designed to fail" in that they "were pooled in R.M.B.S. (Residential Mortgage Backed Securities), securitized, sliced into derivatives, trenches, swapped in Credit Default Swaps (CDS), and 'invested' in several more financial schemes that increased their risk of failure ... without the homeowner's (A) knowledge or approval."  In addition, Plaintiff claims banks "submitted false, forged and robo-signed 'ownership' documents which lead to multiple government (G) lawsuits."  Plaintiff also contends certain law firms, attorneys, public trustees and legislators participated in the fraudulent schemes.

James Wilder, an attorney who represented Plaintiff's customers in defending against foreclosure actions, stopped practicing real estate defense and taking cases from the Plaintiff in or about 2010 when he was persuaded or pressured by "State" Defendants to stop.  The bank and foreclosing attorneys also persuaded the State Defendants to prosecute and stop Plaintiff from challenging the allegedly "false, robo-signed ownership papers."

In August 2011, the Colorado Real Estate Commission and Denver District Attorney (D.A.)

4

seized more than 24 bankers boxes of documents, which they held and failed to reveal to Plaintiff's criminal defense attorney until 45 days before the April 2013 criminal trial.

In October 2011, the State Defendants filed "charges" against Plaintiff with the Denver District Attorney's office, which triggered two arrests and were eventually dismissed on August 16, 2012. On November 17, 2011, the Colorado Real Estate Commission and State of Colorado filed a civil case against Plaintiff for which Plaintiff "was fined as punished in the amount of $10,000"; the case was settled the following month. On or before December 16, 2011, the Denver D.A. Defendants filed another criminal case against Plaintiff , but it was eventually dismissed. Plaintiff alleges certain documents were seized and withheld from his attorney before and during the criminal trial.

In early August 2012, the Denver D.A. Defendants and the Colorado Attorney General Defendants filed a "Grand Jury Indictment" against the Plaintiff alleging the same charges as those raised in the civil case brought by the Real Estate Commission; this case triggered two arrests, seven months in jail, and legal fees and costs to the Plaintiff.

While in the Denver jail, Plaintiff was threatened by Defendant Detective Chun and, after refusing to accept a plea deal, was "savagely" beaten on September 23, 2012 by a "hit man" who was "introduced into jail to eliminate" the Plaintiff. Three days later, Plaintiff's court-appointed attorney delivered a message from the Denver D.A.'s office, "Hey, they want to know if you want more or you are ready to accept the deal?"

On or before December 21, 2012, Defendant Detective Uyamura seized from Plaintiff's home in Thornton, Colorado more than seven bankers' boxes of documents, which included exculpatory evidence for the Plaintiff. The home and property therein were under a current and

effective bankruptcy stay.  From this evidence, the Arapahoe County District Attorney and the Denver District Attorney brought additional criminal cases against the Plaintiff, which triggered additional arrests and legal fees.

Plaintiff contends that the criminal cases were brought to inhibit Plaintiff's exercise of his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights under the U.S. Constitution. He asserts that Defendant Colorado Attorney General Suthers conspired with the Denver County D.A. Defendants, Arapahoe County D.A. Defendants and Defendant Judge Hoffman to discourage Plaintiff from exercising his First Amendment rights.  In addition, Plaintiff alleges the Defendant Public Defender Wilson, Porter-Merrill and Sarwak assisted the prosecution of criminal charges against him by providing him ineffective assistance of counsel.  He further alleges that Defendants CDOC Executive Director Raemisch, Denver Sheriff Frank,[4] Under-Sheriff Wilson and his successor Diggins, and Warden Bonner worked together to unlawfully maintain Plaintiff imprisoned from 2011 to the present and depriving Plaintiff of his legal material, pleadings and mail.  In addition, Sheriff Frank unlawfully seized four properties in Denver County, Defendant Sheriff Mink unlawfully seized three properties in Jefferson County, and Defendant Sheriff Darr unlawfully seized three properties in Adams County, and each sheriff "unlawfully maintained" Plaintiff in jail in their respective counties.  Plaintiff alleges that Defendant Judge Hoffman was biased in favor of the criminal prosecution and failed to act impartially in ruling on motions and trying the case. Furthermore, he contends that Defendants Geigle and Shockley submitted false testimony (coerced by threats and benefits) and other evidence during the criminal trial and knowingly kept him in jail

---

[4]According to Defendant, Plaintiff incorrectly refers to Sheriff Thomas Frank as "Frank Thomas."

6

from August 14, 2012 through February 14, 2013.

Plaintiff also challenges the constitutionality of Colo. Rev. Stat. § 38-38-101, et seq., which amended Colo. R. Civ. P. 120 so that lenders are no longer required to produce original evidence of a note to commence foreclosure proceedings, but only a statement certifying that the party on whose behalf the foreclosure was commenced is the holder of the evidence of debt. The amendments to Rule 120 now allegedly prohibit homeowners from raising constitutional claims or other theories as a defense against a foreclosure during Rule 120 proceedings.

Finally, Plaintiff "questions the unconstitutional application and enforcement of multiple state rules, civil and criminal statutes," the list of which is "too long to list or explain."

## II.    Procedural History

Based upon these allegations, Plaintiff alleges the following claims for relief: (1) violation of the First Amendment against all Defendants, including Plaintiff's right to freedom of religion, freedom of speech, freedom of expression, and freedom to assemble and petition the government; (2) violation of the Fourth Amendment against all Defendants for seizing Plaintiff's property and holding Plaintiff beyond their authority without probable, valid or reasonable conviction and sentence; and (3) violation of the Fourteenth Amendment against all Defendants for deprivation of "a protected liberty interest in freedom from incarceration," by failing to ensure due process "by interfering on unresolved civil matters of exclusive civil nature under clearly existing law," and by depriving Plaintiff of the "opportunity to obtain or retain [sic] defend [his] housing under fair conditions and under judicial settlements [sic] as white folks."

In response to the First Amended Complaint, the existing Defendants filed the present five motions to dismiss arguing generally that Plaintiff fails to state plausible claims for relief, primarily

because Plaintiff fails to identify or describe "who did what to whom," to describe how the individual Defendants personally participated, and to state facts sufficient to invoke municipal liability.  Further, Defendants invoke the *Heck v. Humphry* doctrine and immunities as applicable, such as those contained in the Eleventh Amendment, and both qualified immunity and prosecutorial immunity.

Plaintiff responded to all pending motions in one brief, arguing he does not seek to attack his criminal conviction or incarceration, but to seek redress for violations of constitutional rights after the "superseding DA's indictment of 10/25/12."  Plaintiff contends that this Court has the authority to "enjoin criminal proceedings subsequently commenced under [a challenged state statute] in the state court until its duty is performed."  Plaintiff also re-states the claims in the First Amended Complaint and asserts a number of "facts" (actually, arguments) the Plaintiff alleges were not disputed by the Defendants concerning his rights under the Fair Housing Act and under the First Amendment for freedom of religion; he contends this Court has the authority to enter summary judgment.  Further, Plaintiff argues Defendant Mink is not absolutely immune from liability in this case for "reviewing [an] affidavit for probable cause during [the] investigatory phase of [a] case."  He also contends Defendants have no immunity from seizing his property while under the "protection" of a bankruptcy stay and which included attorney-client privileged information.  Plaintiff argues that the Defendant prosecutors used criminal statutes to deprive him of exercising his protected freedoms under the First Amendment.  He asserts that Defendants' arguments are unsupported by documentary "evidence" and, thus, not persuasive, false and misleading.  Finally, Plaintiff invokes the "equitable tolling" doctrine to demonstrate his claims are not barred by the statute of limitations.

In reply, the Defendants essentially argue that Plaintiff fails to cure the deficiencies asserted in the various motions to dismiss and merely re-states his allegations and claims in an improper conclusory fashion. Defendants reassert their arguments that Plaintiff fails to state plausible claims for relief and ask the Court to dismiss Plaintiff's First Amended Complaint.

## LEGAL STANDARDS

### I.     Dismissal pursuant to Fed. R. Civ. P. 8

The adequacy of pleadings is governed by Federal Civil Procedure Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

The purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the ground upon which it rests." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### II.    Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009)

9

(quoting *Twombly*, 550 U.S. at 570).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id. Twombly* requires a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 678-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Khalik*, 671 F.3d at 1191 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim.  *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## III.    Treatment of a Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*. Accordingly, the court must "not supply additional facts, nor ... construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

Defendants challenge the sufficiency of Plaintiff's allegations arguing that Plaintiff contravenes Fed. R. Civ. P. 8 by asserting conclusory and vague allegations, fails to state plausible

claims for relief pursuant to 42 U.S.C. § 1983, and fails to rebut the immunities certain Defendants enjoy from liability. Keeping the applicable legal standards in mind, the Court will analyze each of these challenges in turn.

## I.      Short and Plain Statement

As a threshold matter, the Court notes that the majority of Plaintiff's First Amended Complaint contains references to statutes, rules, regulations, and cases and constitutes what appears to be primarily legal argument. In fact, it is not until page 18 (of a 46-page pleading) that Plaintiff first references factual allegations pertaining to himself. Even there, Plaintiff discusses issues and occurrences involving third parties not named in this case and makes legal conclusions and arguments throughout. Moreover, Plaintiff sporadically refers to "State Defendants" without identifying to whom he specifically refers. The Court concludes these allegations are vague, conclusory and insufficient to put Defendants on notice of the claims made against them. *See Garrett v. Selby Connor Madduz & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("the Court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.").

Nevertheless, construing the *pro se* pleading liberally as I must, the Court finds that the allegations set forth in the "Background" section of this recommendation, are sufficient to survive dismissal pursuant to Fed. R. Civ. P. 8. The Court will now proceed to determine whether any of these allegations plausibly support claims for relief against the moving Defendants.

## II.     Failure to State Constitutional Claims Pursuant to 42 U.S.C. § 1983

The moving Defendants argue they enjoy certain immunities from suit under Section 1983 and contend the Plaintiff's factual allegations fail to state plausible constitutional claims for relief

against them in their individual capacities.

The Court notes at this juncture that the Plaintiff uses a new term to characterize the capacities in which he sues the Defendants: "representative."  However, the Plaintiff does not explain how a "representative" capacity differs from an "official" one  and the Court finds nothing in the applicable law supporting any such distinction.   Accordingly, the Court will construe Plaintiff's claims as brought against the moving Defendants in their "official" and "individual" (or "personal") capacities.  *See Pride v. Does*, 997 F. 2d 712, 715 (10th Cir. 1993) ("[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both") (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

A.     Eleventh Amendment

Defendant John Suthers, in his official capacity as Colorado's Attorney General, claims he enjoys sovereign immunity from damages by the Plaintiff under the Eleventh Amendment.[5]   In addition, Defendants Brauchler and his predecessor, Chambers (District Attorneys for the 18th Judicial District), Geigle (Deputy District Attorney for the 2nd Judicial District) and Morrissey

---

[5]It remains unclear in the Tenth Circuit whether application of the Eleventh Amendment always requires a jurisdictional analysis.  In *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 941 (10th Cir. 2008), the court described Eleventh Amendment immunity as follows:

> Eleventh Amendment immunity doctrine is not easy to characterize. It shares features with affirmative defenses, while also containing traits more akin to subject-matter jurisdiction.  It is best understood according to its own unique identity, rather than through its similarities with other legal doctrines. In other words, "the Eleventh Amendment occupies its own unique territory."

*Id.* (citations omitted).  The *Burlbaw* court concluded that when a state affirmatively raises Eleventh Amendment immunity, the defense becomes a jurisdictional issue, but when the doctrine is conditionally raised, a court may resolve the merits of the claims first.  *Id.*

(District Attorney for the 2nd Judicial District) (collectively, "D.A. Defendants"),[6] sued in their official capacities, may be protected from suit by the Eleventh Amendment.[7]  Claims against state officials in their official capacities are essentially claims against the state entity.  *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted).  It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  *Kailey v. Ritter*, 500 F. App'x 766, 770 (10th Cir. 2012) (citing *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies.  *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991).  Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

---

[6]These District Attorneys, sued in their official capacities, are executive officers of the State of Colorado.  *See Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (citing *Beacom v. Bd. of Cnty. Comm'rs*, 657 P.2d 440, 445 (Colo. 1983)); *see also Romero v. Boulder Cnty. D.A.'s Office*, 87 F. App'x 696, 698 (10th Cir. 2004) (concluding claims against Boulder County district attorney in his official capacity were barred by Eleventh Amendment); *Bragg v. Office of the Dist. Atty.*, 704 F. Supp. 2d 1032, 1067 (D. Colo. 2009) (office of the 13th Judicial District "is a state agency with the power to assert the defense of sovereign immunity").

[7]"[A] court may raise the issue of Eleventh-Amendment immunity sua sponte but, unlike subject-matter jurisdiction, it is not obligated to do so."  *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (citing *Wisc. Dep't of Corr. v. Schacht,* 524 U.S. 381, 389 (1998)); *see also Nelson v. Geringer,* 295 F.3d 1082, 1098 n. 16 (10th Cir. 2002) ("[T]he [Supreme] Court has stated that judicial consideration of Eleventh Amendment issues sua sponte is discretionary, not mandatory.").

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is properly seeking prospective enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908).  But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages.  *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, the Court construes from his Notice of Constitutional Question and Challenge[8] that Plaintiff seeks a declaration finding Colo. Rev. Stat. § 38-38-101 *et seq.* and other unidentified "state statutes for prosecution" unconstitutional.  First Amended Complaint, docket #342 at 34-37.  To the extent Plaintiff's claims survive Rule 12(b)(6) scrutiny, the Court finds these requests for prospective declaratory relief fall under the *Young* exception.

Regarding his remaining claims, Plaintiff seeks in his First Amended Complaint recovery for economic losses, compensatory and punitive damages, and "[a]ppropriate declaratory and other injunctive relief as to each Defendant in his official capacity."  *See* docket #342 at 46.  Plaintiff does not mention the relief he seeks and, thus, does not provide further explanation, with each claim for relief (*see id.* at 41-45) and the Court need not scour the remaining 40 pages searching for requested relief.  *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("[t]he district court was not obligated to comb the record in order to make [plaintiff's] arguments for him.").  Nevertheless, from the allegations summarized above, the Court can discern no request for prospective declaratory or injunctive relief; in fact, that which was construed as prospective in the original complaint is

---

[8]Plaintiff's Notice appears to be valid under Fed. R. Civ. P. 5.1, as it was contained within the pleading served on the Colorado Attorney General, John Suthers, in his official capacity.

neither alleged nor requested in the amended pleading.  *See* docket #218 at 20.  Without a clear description of the type of declaratory and/or injunctive relief the Plaintiff seeks, the Court cannot determine whether the *Young* exception applies.  *See Buchwald, supra*; *see also Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008) (citing *Utah Animal Rights Coalition v. Salt Lake City Corp.,* 371 F.3d 1248, 1266 (10th Cir. 2004) ("A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.")).  Consequently, the Court finds that any claims brought pursuant to 42 U.S.C. § 1983 and against Defendants Suther, Brauchler, Chambers, Suthers and Geigle in their official capacities for monetary, declaratory (other than that involving his constitutional challenge to state statutes against Suther) and injunctive relief in this case are barred by the Eleventh Amendment, and the Court recommends that the District Court grant the Defendants' motions in this regard and dismiss the official-capacity claims.

B.    Prosecutorial Immunity

The D.A. Defendants also raise the defense of prosecutorial immunity to Plaintiff's claims brought against them in their individual capacities.  Prosecutors enjoy absolute immunity from civil suits for damages asserted against them for actions taken "in initiating a prosecution and in presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  The question of whether a prosecutor is entitled to absolute immunity for his actions depends on the nature of the function performed by the prosecutor at the time of the alleged misconduct. *Buckley v. Fitzsimmons,* 509 U.S. 259, 271 (1993).  Actions taken as an advocate or, more specifically, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State" support absolute immunity. *Id.* at 273.  However,

16

"[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* Instead, prosecutors performing these acts enjoy only qualified immunity. *Id.* If prosecutorial immunity does attach, it is absolute and, therefore, applies to cases of malicious or bad faith prosecution, *Imbler,* 424 U.S. at 437, even if it is obvious "to the prosecutor that he is acting unconstitutionally and thus beyond his authority." *Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983).

Here, construing the pleading liberally, Plaintiffs' claims against the D.A. Defendants involve the following allegations: (1) pressured attorney James Wilder to stop representing Plaintiff and clients in 2010; (2) in August 2011, the Denver D.A. seized more than 24 bankers boxes of documents, which they held and failed to reveal to Plaintiff's criminal defense attorney until 45 days before the April 2013 criminal trial; (3) in October 2011, the Denver D.A. filed "charges" against Plaintiff, which triggered two arrests and were eventually dismissed on August 16, 2012; (4) on or before December 16, 2011, the Denver D.A. Defendants filed another criminal case against Plaintiff, but it was eventually dismissed; (5) in early August 2012, the Denver D.A. Defendants (with the Colorado Attorney General) filed a "Grand Jury Indictment" against the Plaintiff alleging the same charges as those raised in the civil case brought by the Real Estate Commission; (6) sometime after December 21, 2012, the Arapahoe County District Attorney and the Denver District Attorney brought additional criminal cases against the Plaintiff based upon evidence from seven bankers boxes seized by Defendant Uyamura; and (7) Defendant Geigle submitted false testimony (coerced by threats and benefits) and other evidence during the 2013 criminal trial and knowingly kept Plaintiff in jail from August 14, 2012 through February 14, 2013.

The D.A. Defendants argue these functions arise from their roles as a prosecutors.  The Court agrees that allegations (2)-(7) depict conduct that, if true, would be taken by the D.A. Defendants as advocates for the State.  *See Buckley,* 509 U.S. at 273.  However, "pressuring" an attorney to drop a case or stop taking specific clients would not "occur in the course of [a prosecutor's] role as an advocate for the State."  *See id.*  Consequently, the Court must find that the D.A. Defendants are not entitled to prosecutorial immunity for allegation (1), taking it as true.

Moreover, the Plaintiff asserts that the D.A. Defendants' conduct in seizing documents containing exculpatory evidence and failing to revealing the documents to his defense attorney until 45 days before trial violates the requirements set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). However, as argued by the Defendants, a judgment in favor of Plaintiff on his *Brady* claim would imply the invalidity of his conviction.  *See Skinner v. Switzer*, 562 U.S. 521, 131 S.Ct. 1289, 1300 (2011) (holding that *Brady* claims call into question the validity of a plaintiff's convictions and thus, pursuant to *Heck*,[9] are outside the province of § 1983).  Any claims brought by the Plaintiff concerning *Brady* violations, or any other conduct calling into question the validity of Plaintiff's conviction, are not properly raised in this case and must be dismissed.

Therefore, the Court recommends that the District Court find the D.A. Defendants are entitled to absolute prosecutorial immunity from liability for Plaintiff's claims against them in their

---

[9] *Heck v. Humphrey*, 512 U.S. 477, 478 (1994), addressed "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." In *Heck*, the plaintiff's complaint alleged that state prosecutors and police officers engaged in unlawful acts which led to the plaintiff's arrest and ultimate conviction. *Id.* at 479. The Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If so, the Court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*  Here, there is no allegation nor indication that Plaintiff's conviction has been invalidated.

individual capacities with respect to all alleged conduct except allegation (1), "pressuring attorney James Wilder to stop representing Plaintiff and clients in 2010," and grant the motion to dismiss all such claims.

C.   Municipal Liability

The Court liberally construes the First Amended Complaint as raising claims against Defendants Adams County Sheriff Darr, Denver County Sheriff Frank, and Jefferson County Sheriff Mink (collectively, "Sheriff Defendants") in their official ("representative") capacities. "[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent ...." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978). The Supreme Court recognizes that municipalities and other local government units are "persons" to whom Section 1983 applies. *Id.* Defendants Darr, Frank and Mink argue the Plaintiff fails to assert sufficient facts demonstrating the existence of an unconstitutional policy or custom and, if such did exist, that it has been enforced by the county governments.

Local governments can be liable under § 1983 "only for their ***own*** illegal acts." *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (internal quotation and citations omitted) (emphasis in original). Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell*, 436 U.S. at 692). Rather, to prove a § 1983 claim against a municipality, a plaintiff must demonstrate (1) the existence of a municipal policy or custom, which (2) directly caused the injury alleged. *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or

practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). The Court will proceed to determine first whether the Amended Complaint identifies municipal policies or customs that may be attributed to any Defendant.

Plaintiff alleges Sheriff Frank unlawfully seized four properties in Denver County, Sheriff Mink unlawfully seized three properties in Jefferson County, and Sheriff Darr unlawfully seized three properties in Adams County. Other than alleging in conclusory fashion that "[a]ll defendants personally and individually adopted a custom, practice or policy of ignoring the mandates of the law" for his first two claims for relief and "Defendants were the policy makers of Colorado and were therefore responsible for the implementation and execution of all the laws of the State of Colorado relating to their duties" for his third claim, the Plaintiff fails to identify or describe any policy or custom as set forth in *Schneider*. Even construing the amended pleading liberally, the Court discerns no alleged practice nor conduct by the sheriffs that could be construed as a municipal policy or custom. Plaintiff points to no "formally promulgated policy," "well-settled custom or practice," or "deliberately indifferent training or supervision." To the extent Plaintiff alleges the seizures of property were "decisions of final municipal policymakers," Plaintiff fails to allege, or even argue, that the sheriffs are final policymakers concerning searches and seizures. While a sheriff is typically the final policymaker for matters concerning the operations of a county jail, *see, e.g., Cortese v. Black*, 838 F. Supp. 485, 496 (D. Colo. 1993), the Plaintiff provides no support for a proposition that a sheriff is the final policymaker for seizure decisions.

Accordingly, the Court recommends that the District Court find Plaintiff has failed to allege claims against Defendant Denver Sheriff Department and against the Defendant Sheriffs Darr, Frank

and Mink in their official capacities, and grant the motions to dismiss these claims.

    D.    <u>Qualified Immunity</u>

For any claims brought against them in their individual capacities, Sheriff Frank and Detective Daniel Chun assert defenses of qualified immunity.  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton*, 997 F.2d at 779 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806–08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation.  *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). *Pearson* affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S.

at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's potential claims against Sheriff Frank and Detective Daniel Chun in their individual capacities, the Court will examine first whether Plaintiff has alleged sufficient facts supporting a plausible claim that these Defendants violated Plaintiff's constitutional rights. If the Court finds that Plaintiff has alleged sufficient facts showing the violation of a right, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

E.    Stating Constitutional Claims

At this point, the § 1983 claims remaining are those against Defendant Suthers in his official capacity for prospective declaratory relief (regarding constitutionality of the Colorado statute), against the D.A. Defendants in their individual capacities for "pressuring attorney James Wilder to stop representing Plaintiff and clients in 2010," and against Detective Chun and the Sheriff Defendants in their individual capacities.  These Defendants all argue that Plaintiffs fail to state plausible constitutional claims against them.  The Court will first analyze Defendants' argument concerning the statute of limitations, then address each of the claims in turn.

1.    Statute of Limitations

The D.A. Defendants argue that certain of Plaintiff's claims fail because the statute of limitations expired.  "Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules ...." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)) (quotations omitted).  The limitations period applicable to this § 1983 suit is Colorado's two-year statute of limitations which bars suits filed more than two years after the time the cause of action accrued.  *Id.*

(citing *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993); *see also* Colo. Rev. Stat. § 13-80-102. "A § 1983 action 'accrues when facts that would support a cause of action are or should be apparent.'" *Fogle*, 435 F.3d at 1258 (quoting *Fratus v. DeLand*, 49 F.3d 673, 674-75 (10th Cir. 1995)). Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when a complaint indicates on its face that the statute of limitations has expired. *Aldrich v. McCullouch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

While the statute of limitations is an affirmative defense, if it is clear from the complaint that the right to bring an action has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. *Id.*; *Escobar v.. Reid*, 668 F. Supp. 2d 1260, 1287 (D. Colo. 2009) (noting that "once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to [the p]laintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date.").

Here, the remaining claim against the D.A. Defendants – pressuring an attorney to stop representing the Plaintiff – involves conduct that occurred in 2010. This allegation does not appear in the original complaint, which was filed in this action on August 3, 2012. Docket #1. Rather, it first appeared in the First Amended Complaint, filed August 20, 2014. Docket #342. On its face, the First Amended Complaint indicates that the two-year statute of limitations expired for Plaintiff's remaining claim; therefore, Plaintiff's claims are time-barred unless he plausibly alleges the applicable limitations period was sufficiently tolled.

Under Colorado law, equitable tolling is applied in two distinct situations: (1) when "defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner"; and (2) when "truly exceptional circumstances prevented the plaintiff from filing the claim despite

diligent efforts." *Noel v. Hoover*, 12 P.3d 328, 330 (Colo. App. 2000); *see also Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007) ("an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts.") (quoting *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996)).  In practice, however, Colorado courts rarely allow equitable tolling. *Escobar*, 668 F. Supp. 2d at 1272.

Plaintiff argues that "Defendants' concealment of their fraud, delays and blocking tactics, triggers both[ ] Colorado and federal equitable tolling provi[s]ions, herein invoked, to prevent my claims from being barred by the statute of limitations."  Response, docket #376 at 14.  This statement is insufficient to establish a factual basis necessary for tolling.  Even construing the pleading liberally, the Court finds that Plaintiff fails to allege or explain how any of the alleged conduct, including Mr. Wilder's cessation of representing Plaintiff's company or its customers, prevented the Plaintiff from filing claims alleging violations of his constitutional rights against the Defendants in a timely manner.

Accordingly, the Court recommends that the District Court find Plaintiff's remaining claim against the D.A. Defendants in their individual capacities is barred by the statute of limitations, and grant the motion to dismiss such claim.

2.      First Claim for Relief - First Amendment

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress

of grievances." U.S. Const. amend. I.  Plaintiff alleges Defendants deprived him of his "right to freedom of Religion, freedom of Speech, of Expression, Right to Assemble and Petition the Government for Redress."  First Amended Complaint, docket #342 at 41.

At the outset, the Court finds that Plaintiff fails to state sufficient allegations under Fed. R. Civ. P. 8 to support any claims for violations of the right to freedom of religion and right to assemble.  Even construing the First Amended Complaint liberally, the Court discerns no facts supporting a claim that Defendants infringed on the Plaintiff's "right to assemble peaceably in a public place."  *See, e.g., Local Organizing Comm., Denver Chapter, Million Man March v. Cook*, 922 F. Supp. 1494, 1499 (D. Colo. 1996) (citing *Nat'l Socialist White People's Party v. Ringers*, 473 F.2d 1010, 1015 (4th Cir. 1973)).  Moreover, Plaintiff's allegations do not support a freedom of religion claim.  To establish a constitutional violation of his right to free exercise of religion, the plaintiff bears the initial burden of demonstrating that the restriction "substantially burdened his sincerely-held religious beliefs."  *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007).  In this case, the Plaintiff does not even identify his religion nor how the Defendants' conduct somehow burdened his exercise of it.  Accordingly, the Court recommends that the District Court find Plaintiff's allegations insufficient under Rule 8 to plausibly state First Amendment freedom of religion and freedom of assembly claims, and grant the motions dismissing the claims.

For his free speech/expression claims against the individual Defendants, the Plaintiff must plausibly allege: (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct. *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582

F.3d 1155, 1166 (10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

The Plaintiff does not identify or specify the speech/expression in which he was allegedly engaged; the Court construes from the pleading that Plaintiff alleges his serving as "Real Estate Consultant, Civil Rights Advocate and Fair Housing Coordinator to his mainly Hispanic customers to retain, defend, protect and acquire real estate property and to oppose allegedly fraudulent and discriminatory mortgage loans" constitutes the alleged protected activity. Plaintiff then alleges Detective Chun threatened Plaintiff while he was in Denver jail and, after Plaintiff refused to accept a plea deal, Plaintiff was "savagely" beaten on September 23, 2012 by a "hit man" who was "introduced into jail to eliminate" the Plaintiff. Three days later, Plaintiff's court-appointed attorney delivered a message from the Denver D.A.'s office, "Hey, they want to know if you want more or you are ready to accept the deal?" Plaintiff also alleges that Sheriff Frank unlawfully maintained Plaintiff in prison from 2011 to the present and deprived Plaintiff of his legal material, pleadings and mail. In addition, Sheriff Frank unlawfully seized four properties in Denver County, Defendant Sheriff Mink unlawfully seized three properties in Jefferson County, and Defendant Sheriff Darr unlawfully seized three properties in Adams County.

Assuming, without deciding, that Plaintiff was engaged in constitutionally protected speech and that the alleged threat, beating and deprivation of property would chill a person of ordinary firmness from continuing to engage in the speech, Plaintiff has not sufficiently pled that the Defendants' alleged conduct was substantially motivated by his speech. To satisfy the third prong, Plaintiff must establish that "but for the retaliatory motive" the threat, beating and seizures would not have taken place. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Looking at the facts as pleaded, and taking them as true, the allegations reflect that Plaintiff started work as an

advocate for his clients in 2009; he was then charged twice in 2011 for which the charges were dismissed, then he was charged again in 2012 for which he was apparently arrested and held in jail. The pleading itself does not explain or identify any charges, but a document attached to the pleading – a February 24, 2014 Adult Presentence Report – reflects that the Plaintiff was convicted by a jury on 18 counts of various offenses, including racketeering, theft, trespass, burglary and forgery. Docket #342-1 at 82-83.  However, this information does nothing to support Plaintiff's claim that Defendants' threats and seizures were substantially motivated by his attempts to protect his clients' property or defend against discriminatory loans; in fact, the information weighs in favor of the Defendants in possibly providing a legitimate reason – criminal charges – for the Sheriffs' seizure of properties.  Moreover, the Court can infer nothing from the allegations demonstrating any temporal proximity between Defendants' alleged conduct and Plaintiff's protected activity.  *See Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005) ("Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive.").

The Court concludes that Plaintiff fails to state claims for First Amendment retaliation against the individual Sheriffs and Detective Chun, and recommends that the Court grant the motions to dismiss these claims.

With regard to Plaintiff's petition claims, "[t]he First Amendment right to 'petition the government for a redress of grievances' means that an individual has a right to access the courts to redress a constitutional violation." *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992) (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972)).  To state a claim for denial of access to the courts, a plaintiff "must allege that his position as a litigant was prejudiced" by the defendant's actions. *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir.

1993).  In other words, "a plaintiff must demonstrate 'actual injury,' meaning the defendant 'took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim.'" *Rees v. Office of Children & Youth*, 744 F. Supp. 2d 434, 458 (W.D. Pa. 2010) (quoting *Beckerman v. Susquehanna Twp. Police & Admin.*, 254 F. App'x 149, 153 (3d Cir. 2007) (internal quotations omitted) (alteration in original)).  "[D]ue process and the First Amendment require only that an impartial forum be available to litigants, and not that the doors of every courtroom in the land be open to them." *Airlines Reporting Corp. v. Barry*, 825 F.2d 1220, 1224 (8th Cir. 1987).

Again, the Court finds that Plaintiff's allegations against the individual Sheriffs and Detective Chun do not state First Amendment petition for redress claims.  Plaintiff does not allege that, as a result of the alleged threat and beating in jail he was unable to pursue any legal claims; likewise, he does not allege that, because of the Sheriffs' seizure of documents and/or properties, he was unable to bring a claim in court (or anywhere else).  In fact, the presentence report (referenced above) reflects that Plaintiff was incarcerated during the litigation of this case in late 2012 and early 2013, but Plaintiff participated in the litigation during that time and there was no indication that Defendants' conduct prevented the Plaintiff from pursuing his claims here.  *See* dockets ## 36, 68, 70, 81, 83, 84, 111, 163, 182, 190, 191.

Therefore, the Court recommends that the District Court grant the individual Defendants' motions to dismiss Plaintiffs' First Amendment claims against them.

3.      Second Claim for Relief - Fourth Amendment

Plaintiff alleges generally that his Fourth Amendment rights were violated by the Defendants when they "unlawfully held Plaintiff beyond their valid authority without probable, valid or reasonable conviction or sentence to believe he had committed any offense which would have

28

permitted such incarceration." (Docket #342 at 43.) With respect to the remaining individual Defendants, Plaintiff alleges specifically that Sheriff Darr, Sheriff Mink and Sheriff Frank "unlawfully held" him in jail in their respective counties; construing this allegation liberally, the Court finds that Plaintiff attempts to state a false imprisonment/malicious prosecution claim against Sheriff Frank for the 2012-2013 jail time and the "current" incarceration.[10] In addition, Plaintiff alleges Sheriff Darr, Sheriff Mink and Sheriff Frank "unlawfully" seized properties in their respective counties.

The Tenth Circuit has found the following regarding challenging the constitutionality of incarcerations:

> We have held that a plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims. "The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004). If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment. If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution. These torts are only analogies because § 1983 suits ultimately rest on the Constitution, not on state (or federal) common law. *Pierce*, 359 F.3d at 1285-88.

*Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (footnote omitted). Here, construing the allegations liberally and taking them as true, it appears Plaintiff alleges he suffered "7 months" jail time in 2012-2013 pursuant to charges that had been already "settled" and he alleges the current incarceration is pursuant to wrongful process. However, the Court finds that a judgment

---

[10]Plaintiff does not identify when Sheriffs Darr and Mink held him in jail; accordingly, the Court finds the allegations are vague and insufficient under Rule 8. Moreover, to the extent that the Plaintiff alleges claims based upon incarceration(s) that occurred and ended prior to August 2012, the claims are time-barred. *See Sanchez v. Hartley*, -- F. Supp. 2d -- , 2014 WL 4113138, at *5 (D. Colo. Aug. 20, 2014) (citing *Mondragon*, 519 F.3d at 1082-83).

in favor of Plaintiff on his claims for false arrest/imprisonment would necessarily imply the invalidity of his conviction.  See *Burden v. Wood*, 200 F. App'x 806, 807-08 (10th Cir. 2006).  The Court finds that a favorable adjudication of the merits of the claim, that the defendants charged him twice for the same crimes, would clearly call the conviction into question. Accordingly, the false imprisonment claim is barred by *Heck v. Humphrey,* 512 U.S. 477 (1994).  As for the malicious prosecution claim, it too would be barred by the favorable termination rule announced in *Heck*.  In *Heck,* the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance or a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87.  Plaintiff does not allege that he obtained a favorable termination of his conviction and, again, the claim is necessarily barred by *Heck*, as such suit would constitute an impermissible collateral attack on the validity of any conviction.  *See Duamutef v. Morris*, 956 F. Supp. 1112, 1117-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, First Amendment retaliation, and conspiracy for failure to satisfy *Heck*); *Burden*, 200 F. App'x at 807 (in light of a conviction that has not been overturned on direct appeal or otherwise rendered invalid, plaintiff's false arrest claim cannot be maintained in light of *Heck* ); *Wheeler v. Scarafiotti,* 85 F. App'x 696, 700 (10th Cir. Jan. 8, 2004) ("an attempt to convince a jury that the [defendant] officers falsified the very reports that led to [plaintiff's] conviction would cast doubt on that conviction").

    Accordingly, the Court recommends that the District Court grant Defendants' motions to dismiss Plaintiffs' Fourth Amendment claims against the individual Defendants.

4.      Third Claim for Relief - Fourteenth Amendment

For his third claim, Plaintiff asserts primarily conclusory allegations (as in most of the pleading) that the Defendants violated his due process rights with regard to his current incarceration. In addition, he alleges "The actions by Defendants ... deprived Plaintiffs [sic] and those similarly situated the opportunity to obtain or retain defend [sic] their housing under fair conditions and under judicial settlements as [sic] white folks." Accordingly, the Court construes this allegation as a claim for violation of the Equal Protection clause.

However, as described above, the due process claim concerning Plaintiff's incarceration fails under *Heck*. With respect to the equal protection claim, Plaintiff's allegations are insufficient under Rule 8 to state a plausible claim. The Equal Protection Clause provides that "[n]o State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend X I V, § 1. This clause prohibits the government from treating similarly situated individuals differently. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Here, Plaintiff fails to describe how the Sheriffs' seizure of documents and properties (notably, there are no allegations describing to whom these properties allegedly belonged) interfered with his ability to "obtain, retain or defend" his housing. Moreover, there is nothing identifying or describing how the Sheriffs treat "whites" differently than the Plaintiff.

Plaintiff also claims he suffered "double jeopardy" in violation of the Fifth Amendment when Defendants filed a "Grand Jury Indictment" for the same civil cause of action already "settled. First Amended Complaint, docket #342 at 23. The Double Jeopardy clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment (*Bobby v. Bies*, 556 U.S. 825, 832 (2009)), "protects against multiple punishments for the same offense." *Missouri v. Hunter*, 459 U.S.

359, 365 (1983).  However, Plaintiffs fail to allege any facts supporting this claim other than that

Defendants filed an indictment on the "same" civil cause of action or for the "same" alleged crimes.

Plaintiff does not identify which crimes or causes of action are allegedly the same, or even that he

has received multiple punishments for the same offense.  *See Blockburger v. United States*, 284 U.S.

299, 304 (1932) ("where the same act or transaction constitutes a violation of two distinct statutory

provisions, the test to be applied to determine whether there are two offenses or only one, is whether

each provision requires proof of a fact which the other does not.").

Accordingly, the Court finds that Plaintiff has failed to state plausible claims for violations

of the Fourteenth Amendment, and recommends that the District Court grant Defendants' motions

to dismiss these claims.

> 5.    Constitutionality of Statutes

At the outset, the Court finds Plaintiff's attempt to challenge "state statutes for prosecution"

the "list" of which is "too long to list or explain" is insufficient under Rule 8.  Plaintiff's failure to

identify a single statute he challenges under which he was prosecuted fails to notify the Defendants

of his claim.  Accordingly, the Court recommends that the District Court grant the Defendants'

motions to dismiss any claim Plaintiff brings to challenge the constitutionality of "state statutes for

prosecution."

Plaintiff also challenges the constitutionality of Colo. Rev. Stat. § 38-38-101, *et seq.*,

alleging it "allows the illegal foreclosure and subsequent taking of real properties in Colorado,

without affording the homeowner a due process of law and without proper and just compensation";

Plaintiff contends the statute "violates ... the 1st, 4th, 5th, 7th and 14th Amendments of the Bill of

Rights."  First Amended Complaint, docket #342 at 34.  Defendant Suthers, Colorado Attorney

General, argues that Plaintiff fails to state a plausible challenge because there are no allegations demonstrating that Plaintiff was convicted of a crime under § 38-38-101 and nothing supporting Plaintiff's position that he was charged and convicted pursuant to the statute. Moreover, Suthers asserts that Plaintiff lacks standing to challenge the statute, since Plaintiff fails to allege that he suffered any foreclosure on a mortgage or had any protected constitutional right against such foreclosure or to having ownership in a home. Plaintiff responds asserting "I've clearly established a case or controversy and ripeness under Art. III," then cites several cases concerning the commerce clause and lists the ways in which he believes he has been injured by Defendants, mostly concerning his arrests, conviction and incarceration. Response, docket #376 at 12-13.

Colo. Rev. Stat. § 38-38-101 provides a mechanism by which a holder of evidence of a debt may elect to foreclose in Colorado's state court system. To have standing to challenge this statute, the Plaintiff must show that he has been or is being injured, that the challenged law causes the injury, and that the lawsuit will provide relief for the injury. *See Colorado Outfitters Ass'n v. Hickenlooper*, -- F. Supp. 2d --, 2014 WL 3058518, at *3 (D. Colo. June 26, 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The injury must be actual and concrete, rather than anticipated, hypothetical, or speculative. *Id.*

Plaintiff does not allege a specific injury in his challenge to the statute; rather, he generally states that the statute "negatively and unfairly affect[s] the general public's welfare" and "harms the public." First Amended Complaint, docket #342 at 34. Construing the pleading (quite) liberally, one may infer that Plaintiff alleges his conviction and incarceration were caused by application of the statute; however, the Court agrees that Plaintiff fails to allege either that he was charged and convicted under the statute or, even, that he has suffered a foreclosure or other injuries pursuant to

33

the statute.   Thus, his alleged injuries resulting from the statute, if any, are neither actual nor concrete.   Moreover, Plaintiff does not (and cannot) allege that a judgment invalidating the foreclosure statute would redress his claimed injuries, namely, the conviction and incarceration. Consequently, the Court finds that Plaintiff fails to allege facts demonstrating he has standing to challenge Colo. Rev. Stat. § 38-38-101, *et seq.*, and recommends that the District Court grant Suthers' motion to dismiss Plaintiff's claim challenging the constitutionality of the statute.

## V.      Failure to State Claims pursuant to 42 U.S.C. § 3617

Under his first claim for relief, Plaintiff asserts a violation of 42 U.S.C. § 3617 "against all state defendants."  Docket #342 at 41.

The Fair Housing Act (FHA) provides a private right of action for an "aggrieved person" subjected to "an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A).  An aggrieved person is defined to include any person who "claims to have been injured by a discriminatory housing practice."   42 U.S.C. § 3602(i).   A discriminatory housing practice is "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title."   42 U.S.C. 3602(f).

The FHA protects a wide scope of persons; thus, "to make out a prima facie case under Section 3617, plaintiff must demonstrate that (1) she is a member of a protected class under the Fair Housing Act; (2) she exercised or enjoyed a right protected by Sections 3603 through 3606, or aided or encouraged others in exercising or enjoying such rights; (3) intentional discrimination motivated defendants' conduct, at least in part; and (4) defendants' conduct constituted coercion, intimidation, a threat, or interference on account of plaintiff having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606." *Zhu v. Countrywide Realty Co., Inc.*, 165 F. Supp. 2d 1181, 1196 (D. Kan. 2001) (citing *United States v. Sea Winds of Marco, Inc.*,

34

893 F. Supp. 1051, 1055 (M.D. Fla.1995)).

Here, Plaintiff mentions that he is of Hispanic descent; thus, the Court finds that he has met the first prong for alleging claims under the FHA.  Also, Plaintiff alleges that he served as an "advocate" for other Hispanic persons in "defending and protecting" their real property and in "opposing fraudulent, discriminatory and predatory mortgage loans" (docket #342 at 18); therefore, the second prong is met.  However, other than (again) very vague and conclusory allegations, the First Amended Complaint contains no factual allegations concerning whether Defendants' alleged conduct was motivated by the Plaintiff's or his clients' race and whether the conduct "constituted coercion, intimidation, a threat, or interference on account of" the Plaintiff having "aided or encouraged others in exercising" a protected right.  Thus, Plaintiff fails to state plausible claims under 42 U.S.C. § 3617, and the Court recommends that the District Court grant Defendants' motions to dismiss these claims.

## IV.    Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).  As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations.  *See Bellmon,* 935 F.2d at 1109-10.

Here, the Plaintiff, although proceeding *pro se*, appears to be familiar with the applicable legal concepts and landscape, and he has a firm grasp of the facts and issues in this case.  The legal

issues stemming from the alleged constitutional violations are not overly complex, novel, or difficult to state or analyze.  Further, allowing Plaintiff to amend his First Amended Complaint to cure any deficiencies would be futile because this Court has determined that the well-pleaded facts, taken as true, do not state viable causes of action.

Moreover, the Plaintiff was alerted to the insufficiency of his claims against Defendants with the initial round of motions to dismiss filed by the Defendants and, again, by the present second round of motions to dismiss, but failed to seek leave to amend the operative pleading. In other words, the Plaintiff was given repeated notice and the opportunity to cure his defective allegations, but he did not seize the opportunity.  *See Bellmon*, 935 F.2d at 1109-10 ("a motion to dismiss giv[es] plaintiff notice and opportunity to amend his complaint").  Furthermore, the Plaintiff mentions nothing in his response brief that demonstrates he may be able to cure the pleading deficiencies identified here. Accordingly, the Court recommends that Plaintiff be denied leave to file a second amended complaint against these Defendants.

## CONCLUSION

The Plaintiff has failed to state cognizable claims against all moving Defendants in their individual and official capacities in this case.  Accordingly, the Court respectfully RECOMMENDS that Defendant Adams County Sheriff Douglas N. Darr's Motion to Dismiss [filed September 8, 2014; docket #356], Defendants' Thomas Frank and Denver Sheriff Department's Motion to Dismiss [filed September 15, 2014; docket #358], Jefferson County Sheriff Ted Mink's Motion to Dismiss [filed September 16, 2014; docket #361], Defendants Mitchell R. Morrissey, Dan Chun, Phillip Geigle and George Brauchler and Carol Chambers' Motion to Dismiss and for Sanctions [filed September 16, 2014; docket #362], and Defendant John Suthers' Motion to Dismiss Plaintiff's

First Verified Amended Complaint [filed September 16, 2014; docket #363] be **GRANTED** as set forth herein.

In addition,  this Court recommends that the District Court dismiss without prejudice the claims brought against newly named Defendants Raemisch, Bonner, Hoffman, Shockley, Uyamura, Gary Wilson, Diggins, Douglas Wilson, Diggins, Porter-Merrill, and Sarwak pursuant to Fed. R. Civ. P. 4(m).

Respectfully submitted this 29th day of December, 2014, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

37